## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ALVIN KOTZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-0856 (RMU)** |
| | ) | |
| **HARLEY G. LAPPIN, DIRECTOR,** | ) | |
| **FEDERAL BUREAU OF PRISONS** | ) | |
| **and** | ) | |
| **FEDERAL BUREAU OF PRISONS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ———————————————————— | ) | |

## DEFENDANTS' MOTION TO DISMISS

Defendants, the Federal Bureau of Prisons ("BOP") and Harley Lappin, Director, BOP,

hereby move, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3), (b)(6), and (b)(7) to dismiss this

action. In support of this motion, the Court is respectfully referred to the Memorandum in

Support of Defendants' Motion to Dismiss, and in Opposition to Plaintiff's Motions for a

Temporary Restraining Order and a Preliminary Injunction. A Proposed Order consistent with

this Motion is attached hereto.


Respectfully submitted,


__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

___/s/_____

WYNEVA JOHNSON, D.C. BAR # 278515
Assistant United States Attorney
555 Fourth Street, N.W., Room E4106
Washington, D.C. 20530
(202) 514-7224

___/s/_____

JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

Of Counsel:

Alma Lopez
Assistant General Counsel
Office of the General Counsel
Litigation Branch
Federal Bureau of Prisons

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ALVIN KOTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0856 (RMU) |
| | ) | |
| HARLEY G. LAPPIN, DIRECTOR, | ) | |
| FEDERAL BUREAU OF PRISONS | ) | |
| and | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS,**
**AND IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR A TEMPORARY**
**RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

## INTRODUCTION

Defendants, the Federal Bureau of Prisons ("BOP") and Harley Lappin, Director, BOP, respectfully oppose Plaintiff's Motions for a Temporary Restraining Order ("TRO") and for a Preliminary Injunction ("PI"), and hereby move, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3), (b)(6), and (b)(7), to dismiss the Complaint in this action. Plaintiff, a Federal prisoner housed in Cumberland, Maryland, is before this Court challenging the BOP's determination that he is ineligible for a second sentence reduction under 18 U.S.C. § 3621(e). This statutory provision gives the BOP broad discretionary authority to award sentence reductions to nonviolent inmates who successfully complete a Residential Drug Abuse Program ("RDAP") and meet other specified criteria. In his Motions, Plaintiff requests that the Court enter a PI and/or a TRO (1) requiring the BOP to reverse its denial of a reduction in sentence for Plaintiff's participation in the RDAP program, (2) permanently and preliminary enjoining the BOP from denying Plaintiff's

consideration for a reduction in sentence pursuant to the RDAP program, and (3) enjoining the BOP from taking any retaliatory action as a result of the Court's order.

Defendant submits that this Court should deny Plaintiff's motions because Plaintiff has not demonstrated that he is able to satisfy even a single element of the four part test which must be satisfied before a Court may issue a TRO or PI. Indeed, Plaintiff cannot establish that he has a strong or substantial likelihood of succeeding on the merits, for at least three reasons. First, it is well established that habeas corpus is the exclusive remedy for any prisoner who (like Plaintiff) seeks to gain earlier release or even to improve his chances of earlier release. Such an inmate must proceed by way of a writ of habeas corpus, in an action which names his custodian (i.e., his warden). The action must be filed in a jurisdiction in which personal jurisdiction can be exercised over the warden. Thus, Plaintiff's reliance upon jurisdictional bases other than habeas corpus is improper, and his action also cannot proceed in the District of Columbia because he is housed in a Maryland prison.

Second, this Court lacks jurisdiction over Plaintiff's action because Plaintiff has failed to comply with the administrative exhaustion requirements which are set forth in the BOP's duly promulgated regulations. Even if Plaintiff can surmount these infirmities in its action, Plaintiff is unlikely to prevail on the merits because the BOP's decision was reasonable and consistent with 18 U.S.C. § 3621(e), the implementing regulations, and the BOP's longstanding policy. Moreover, Plaintiff's contention that the BOP's policy guidance somehow violated the notice and comment requirements of the Administrative Procedure Act is unavailing. Nor has Plaintiff demonstrated that he will suffer irreparable harm if the injunction is not granted, that other interested parties will not suffer substantial harm if the injunction is granted, and that the public

interest will be furthered by the injunction.  Accordingly, Defendants respectfully submit that

Plaintiff's request for these extraordinary remedies should be denied.  For the reasons set forth

herein, this action also should be dismissed.

## STATUTORY AND REGULATORY BACKGROUND

**I.      The BOP has Discretionary Authority to Reduce the Sentences of Nonviolent
         Offenders who Successfully Complete Drug Treatment Programs**

The BOP is required by statute to make residential substance abuse treatment available to

every inmate who is determined to have a substance abuse problem and volunteers to participate

in such a program, subject to the availability of appropriations.  See 18 U.S.C. §§ 3621(e)(1),

(e)(5)(A)-(B).  To encourage prisoners to successfully complete these treatment programs,

Congress has authorized (but not required) the BOP to grant up to a one-year sentence reduction

in the sentence of a nonviolent offender who successfully completes a Residential Drug Abuse

Program.  See 18 U.S.C. § 3621(e)(2)(B).  Specifically, federal law provides that

> [t]he period a prisoner convicted of a nonviolent offense remains in custody after
> successfully completing a [Residential Drug Abuse] treatment program may be
> reduced by the Bureau of Prisons, but such reduction may not be more than one
> year from the term the prisoner must otherwise serve.

See 18 U.S.C. § 3621(e)(2)(B) (emphasis added).

The BOP has promulgated detailed implementing regulations which provide for drug

abuse treatment programs for inmates, set forth eligibility conditions, and address consideration

for early release based on participation in such programs.  See 28 C.F.R. §§ 550.50-550.59.

Consistent with the statute, these regulations instruct that "[a]n inmate who was sentenced to a

term of imprisonment . . . for a nonviolent offense, and who is determined to have a substance

abuse treatment problem, and successfully completes a residential drug treatment program during

3

his or her current commitment <u>may</u> be eligible . . . for early release by a period not to exceed 12 months." <u>See</u> 28 C.F.R. § 550.58 (emphasis added). Although section 550.58 identifies a few specific categories of inmates who are "not eligible for early release," it does not indicate that this list is intended to be exclusive. <u>See</u> 28 C.F.R. § 550.58(a)

The Director of the BOP has exercised the discretion vested in him by Congress under section 3621(e), by not allowing more than one early release per inmate for the completion of an RDAP. <u>See</u> Ex. C, Declaration of Beth Weinman, ¶ 4. The BOP has placed affected parties on notice of this policy with a Program Statement which advises that "[i]nmates may earn an early release for successful RDAP completion only once." <u>See id.</u>, ¶ 4; Ex. D, Program Statement 5331.01 (entitled <u>Early Release Procedures under § 3621(e)</u>) at 3. Since the enactment of 18 U.S.C. § 3621(e)(2)(B), the BOP has consistently adhered to its policy of not providing inmates who were previously credited with sentence reductions and are subsequently convicted of additional crimes with subsequent sentence reductions. <u>See</u> Ex. C, Declaration of Beth Weinman, ¶ 3. RDAP participation, however, continues to be available to these inmates. <u>Id</u>.

## II.    The Administrative Appeals Process for Challenges to Prison Conditions

Under the Prison Litigation Reform Act, a prisoner must exhaust "such administrative remedies as are available" before bringing a civil action in federal court. <u>See</u> 42 U.S.C. §1997e(a). The Bureau of Prisons administrative remedy procedure is set out at 28 C.F.R. § 542.10 <u>et seq</u>., and provides for formal review of any complaint which relates to any aspect of the inmate's confinement. <u>See</u> 28 C.F.R. §§ 542.10(a) (explaining that "[t]he purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating

to any aspect of his/her own confinement"), 550.60(a) (advising that the "[a]dministrative

remedy procedures for the formal review of a complaint relating to any aspect of an inmate's

confinement (including the operation of the drug abuse treatment programs) are contained in 28

C.F.R. Part 542, subpart B").

    Under this process, inmates are required to first present their complaints informally to

prison staff and attempt to informally resolve the matter with them before they submit a formal

Request for Administrative Remedy. See 28 C.F.R. §§ 542.13-542.14.[1] If informal resolution is

insufficient to resolve the matter, the inmate may file a formal complaint with the Warden within

twenty calendar days of the date on which the basis of the complaint occurred. See 28 C.F.R.

§§ 542.13-542.14.[2] If the inmate is dissatisfied with the Warden's response, he or she may appeal

it by filing an Appeal with the Regional Director within 20 days of the date the Warden signed

the response. See 28 C.F.R. § 542.15. If the inmate is dissatisfied with the decision of the

---

[1] This informal resolution requirement is subject to a few exceptions, none of which are applicable in this case. These exceptions are applicable to: (1) inmates housed in a Community Corrections Center; (2) inmates who can demonstrate an acceptable reason for bypassing informal resolution and have received waivers from their Warden or institution's Administrative Remedy Coordinator; (3) Control Unit Appeals; (4) Controlled housing status appeals; and (5) situations where an inmate reasonably believes that an issue is sensitive and that his or her safety or well being would be placed in danger if the Request became known. See 28 C.F.R §§ 542.13(b), 542.14(d). Plaintiff has not alleged, and the available evidence does not reveal, that any of these exceptions were invoked or implicated in this case. Thus, the Plaintiff was subject to this informal resolution requirement.

[2] The requirement that the inmate initially file a formal written Administrative Remedy Request with his warden is subject to a few exceptions, none of which are applicable in this case. These exceptions apply to: (1) situations where an inmate reasonably believes that an issue is sensitive and that his or her safety or well being would be placed in danger if the Request became known; (2) DHO appeals; (3) Control Unit Appeals; and (4) Controlled housing status appeals. See 28 C.F.R §§ 542.14(b), (d). Plaintiff has not alleged, and the available evidence does not reveal, that any of these exceptions were invoked or implicated in this case. Thus, the Plaintiff was subject to this requirement.

Regional Director, he or she may then submit an Appeal to the BOP's Office of General Counsel in Washington, D.C., within 30 calendar days of the date of the Regional Director's decision. See 28 C.F.R. § 542.15. Appeal to the Office of General Counsel is the final appeal in the BOP's administrative appeals system.

<u>**STATEMENT OF FACTS AND PRIOR PROCEEDINGS**</u>

Plaintiff, Alvin Kotz, is currently an inmate of the Federal Correctional Institution Cumberland, in Maryland. See Ex. A, Declaration of Bruce Plumley, ¶¶ 4-5 (May 10, 2007); Ex. B, Declaration of H. Leon Bryan, ¶ 3. Mr. Kotz currently has a release date of August 17, 2008. See Complaint at 3, ¶ 17; Pl.'s Mot. for TRO at 3, ¶ 9. Mr. Kotz has twice been convicted of violations of federal law, sentenced to jail time, and incarcerated with the BOP. See Ex. A, Declaration of Bruce Plumley, ¶ 5 (May 10, 2007); Ex. B, Declaration of H. Leon Bryan, ¶ 3.

On September 16, 1991, Mr. Kotz was sentenced in the United States District Court for the District of Columbia to a prison term of 120 months, followed by 10 years of supervised release, for violation of 21 U.S.C. § 846, Conspiracy to Distribute a Controlled Substance (count one). On that date, he was also sentenced to a prison term of 60 months, and 3 years of supervised release, to be served concurrently with count one, for violation of 31 U.S.C. §§ 5322(A) and 5324(3), Evading Financial Reporting Requirements (count two). During the period Mr. Kotz was serving out his sentence for these various offenses, he successfully completed a Residential Drug Abuse Program. See Ex. A, Declaration of Bruce Plumley, ¶ 5 (May 10, 2007); Ex. B, Declaration of H. Leon Bryan, ¶ 3. The BOP decided to grant him an early release for this reason, pursuant to 18 U.S.C. § 3621(e)(2). Id. Mr. Kotz was released on June 8, 1999, with a 10 year term of supervised release ("SRT"). Id.

6

On October 31, 2005, Mr. Kotz was convicted for a second time, in the U.S. District Court for the District of Maryland, for conducting an illegal gambling business and engaging in money laundering.  See Declaration of Paul C. Kurtz, ¶ 2 (May 4, 2007) (Exhibit 1 to Pl.'s Memorandum in Support of Pl.'s Mot. for TRO); Ex. B, Declaration of H. Leon Bryan, ¶ 3.  The Court sentenced Mr. Kotz to a 36 month jail term for these offenses.  See Declaration of Paul C. Kurtz, ¶ 2 (May 4, 2007); Ex. A, Declaration of Bruce Plumley, ¶ 5 (May 10, 2007); Ex. B, Declaration of H. Leon Bryan, ¶ 3.  Because these offenses violated the conditions of his supervised release, the Court also sentenced Mr. Kotz to a new and a concurrent 20-month term for violating his SRT.  See id.

Paul C. Kurtz is the Executive Director of Federal Inmate Advocates, a prison rights advocacy organization.  See Memorandum in Support of Plaintiff's Motion for a Temporary Restraining Order ("Pl.'s Mot. for TRO") at 2; Declaration of Paul C. Kurtz, ¶ 1 (May 4, 2007) (attached to Pl.'s Mot. for TRO).  On December 16, 2005, Mr. Kurtz sent a letter to Dr. Mark Simpson, the BOP's RDAP Regional Coordinator, in which he advised Mr. Simpson that Mr. Kotz had been ordered to voluntarily surrender at the Federal Correctional Institution Cumberland, in Maryland, and requested that Mr. Simpson insure that Mr. Kotz be allowed to participate in the RDAP there.  See Pl.'s Mot. for TRO at 2;  Declaration of Paul C. Kurtz, ¶ 5; December 16, 2005 Letter from Mr. Kurtz to Mr. Simpson (attached as Exhibit 1 to Pl.'s Mot. for TRO).  In his December 2005 letter, Mr. Kurtz claimed that in July 2005 he had been advised by Samuel Betts, an administrator in the BOP Regional office, that Mr. Kotz's prior participation in the RDAP would not prevent him from participating in the program a second time.  See December 16, 2005 Letter from Mr. Kurtz to Mr. Simpson.

The BOP subsequently admitted Mr. Kotz to the March 2006 "cohort" of RDAP.  See Pl.'s Mot. for TRO at 2; Declaration of Paul C. Kurtz, ¶ 6.  On January 23, 2006, Mr. Kotz was given written notice that, while he was qualified to participate in the RDAP program, he was ineligible for a second sentence reduction under 18 U.S.C. § 3621(e), because he had previously received an early release pursuant to that provision once before.  See Residential Drug Abuse Program Notice to Inmate (January 23, 2006) (attached as an Exhibit 2 to Pl.'s Mot. for TRO); see also Ex. B, Declaration of H. Leon Bryan, ¶¶ 1-3; Pl.'s Mot. for TRO at 2-3.  This Form notice, "Residential Drug Abuse Program Notice to Inmate" which was signed by H. Leon Bryan, the BOP's Drug Abuse Program Coordinator at the Federal Correctional Institution in Cumberland, Maryland and provided to Plaintiff.  Id.  This was the final agency action which is at issue in this case.

A Request or Appeal is only considered filed on the date it is logged into the Administrative Remedy Index as received.  See 28 C.F.R. § 542.18.  BOP's SENTRY database contains records of and information about all administrative requests and appeals filed by BOP inmates.  See Ex. A, Declaration of Bruce Plumley, ¶ 3 (May 10, 2007).  The BOP's SENTRY database indicates that, as of May 10, 2007, Mr. Kotz had not personally filed any Requests for Administrative Remedy challenging this or any other determination since his incarceration on his most recent sentence and SRT revocation term.  See Ex. A, Declaration of Bruce Plumley, ¶¶ 1, 3-4, 6 (May 10, 2007).

Plaintiff  failed to take any measures to administratively challenge the BOP's determination that he was ineligible for a second sentence reduction. On February 23, 2006, Mr. Kurtz wrote to Mr. Simpson, the BOP RDAP Regional Coordinator and requested that he

8

overrule the January 23, 2006 determination.  See February 23, 2006 Letter from Paul C. Kurtz to

Dr. Simpson (attached as an Exhibit 3 to Pl.'s Mot. for TRO); see also Pl.'s Mot. for TRO at 2, ¶

7; Declaration of Paul C. Kurtz, ¶ 8.

 In 2006, Mr. Kotz retained an attorney, Plato Cacheris.  Mr. Cacheris sent a letter to the

General Counsel of the BOP, Kathleen Kenney, and to John M. Vanyur, the Assistant Director of

the BOP, on Mr. Kotz's behalf.  See October 11, 2006 Letter from Mr. Vanyur to Mr. Cacheris

(attached as an Exhibit 4 to Pl.'s Mot. for TRO).  In this letter, Mr. Caheris requested a

clarification as to whether an inmate who has previously completed the RDAP and received a

reduction in sentence is eligible to participate again and receive yet another reduction in sentence

on a subsequent term of incarceration.  Mr. Cacheris claimed that Mr. Kotz had received

representations from BOP staff about his eligibility for a second RDAP related early release.  Id.

In an October 11, 2006 letter, Mr. Vanyur responded to Mr. Cacheris's letter and stated:

> [s]ince the implementation of 18 U.S.C. § 3621(e)(2)(B), the Bureau has never provided inmates who have successfully completed the RDAP with more than one reduction in sentence.  If inmates were allowed to receive multiple sentence reductions, the integrity of the early release incentive to participate in and complete the RDAP would be compromised.  Those inmates who have demonstrated continuing criminal behaviors after completion of the program have established their continuing need for working on changing their behavior before they leave a confined setting. . . .
>
> . . . The Bureau's policy clearly states in section 5(c), of Program Statement 5331.01, that as documented in the Early Release Procedures [u]nder 18 U.S.C. § 3621(e), inmates "are not eligible for early release if they had received it previously." The fact that this language not contained in the formal rules language is irrelevant.  The regulations state that inmates "may receive incentives" for satisfactory involvement in RDAP, not that they must receive such incentives.

See October 11, 2006 Letter from Mr. Vanyur to Mr. Cacheris (emphasis added).

There is no indication in the existing record that Mr. Kotz, Mr. Kurtz, or Mr. Caheris ever (1) submitted an informal request at the institution level, (2) filed a request with the Warden at the institution where Mr. Kotz is housed, or (3) filed an appeal with the Regional Director of the BOP, with regard to the BOP's January 23, 2006 determination. The BOP regulations concerning administrative appeals require that such appeal or request he made. See 28 C.F.R. §§ 542.10-542.19. Plaintiff has not alleged otherwise. On May 8, 2007, Mr. Kotz, filed a Complaint, along with a Motion for Preliminary Injunction, and a Motion for a Temporary Restraining Order, in this Court.

## ARGUMENT

## I.      THE FOUR PRONGED TEST FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); see also Yakus v. United States, 321 U.S. 414 (1944); Emily's List v. Federal Election Comm'n, 362 F.Supp.2d 43, 51 (D.D.C. 2005), 362 F.Supp.2d at 51; National Head Start Ass'n v. Department of Health and Human Services, 297 F.Supp.2d 242, 246 (D.D.C. 2004); Varicon Int'l v. Office of Personnel Management, 934 F.Supp. 440 (D.D.C. 1996); Kahane v. Secretary of State, 700 F.Supp. 1162, 1165 (D.D.C. 1988). Similarly, a "TRO is an extraordinary remedy and should not be granted lightly." See Federation Internationale De Football Ass'n v. Nike, Inc., 285 F.Supp.2d 64, 68 (D.D.C. 2003); Experience Works, Inc. v. Chao, 267 F.Supp.2d 93, 96 (D.D.C. 2003); F.T.C. v. Exxon Corp., 636 F.2d 1336, 1343 (D.C. Cir.1980).

10

The standards for preliminary injunctive relief, in the form of either a preliminary injunction or a temporary restraining order, are well established:

> [T]he moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. E.g., Mova Pharm. Corp., 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995)) (internal quotation marks omitted). A district court must "balance the strengths of the requesting party's arguments in each of the four required areas." CityFed, 58 F.3d at 747. If the showing in one area is particularly strong, an injunction may issue even if the showings in other areas are rather weak. Id.

See Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006); see also Sea Containers, Ltd. v. Stena AB, 890 F.2d 1205, 1208 (D.C.Cir. 1989); Wisconsin Gas Co. v. F.E.R.C., 758 F.2d 669, 673-74 (D.C. Cir. 1985); Washington Metropolitan Area Transportation Commission v. Holiday Tours, Inc., 559 F.2d 841, 843-44 (D.C. Cir. 1977); Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958). This is an exacting standard that the Plaintiff has not met.

The Court should balance the strengths of the requesting party's arguments in each of these required areas. CityFed Fin. Corp., 58 F.3d at 747. It is particularly important, however, for the movant to demonstrate a substantial likelihood of success on the merits. See Emily's List, 362 F.Supp.2d at 51 (citing Barton v. Dist. of Columbia, 131 F.Supp.2d 236, 242 (D.D.C. 2001) and Benton v. Kessler, 505 U.S. 1084, 1085 (1992)). If the movant is unable to do so, the movant must then present a "very strong showing" with respect to the other preliminary injunction factors. See Emily's List, 362 F.Supp.2d at 51-52 (quoting Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 366 (D.C. Cir. 1999)) (emphasis added).

This Circuit has set a high standard for irreparable injury. First, the injury "'must be both

certain and great; it must be actual and not theoretical.'"  See Chaplaincy of Full Gospel

Churches, 454 F.3d at 297 (citing Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674

(D.C.Cir.1985) (per curiam)).  The moving party must show "'[t]he injury complained of is of

such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable

harm.'"  Id.  Second, the injury must be beyond remediation.  See Chaplaincy, 454 F.3d at 297.

As the D.C. Circuit has explained:

> The key word in this consideration is irreparable.  Mere injuries, however substantial, in
> terms of money, time and energy necessarily expended in the absence of a stay are not
> enough. The possibility that adequate compensatory or other corrective relief will be
> available at a later date, in the ordinary course of litigation weighs heavily against a claim
> of irreparable harm.

See Chaplaincy, 454 F.3d at 297-98 (quoting Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674

(D.C.Cir.1985) and Va. Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C.Cir.1958))

(internal quotation marks omitted); see also Sampson v. Murray, 415 U.S. 61, 88-90 (1974).

An "injury held insufficient to justify a stay in one case may well be sufficient to justify it

in another, where the applicant has demonstrated a higher probability of success on the merits."

Virginia Petroleum Jobbers Ass'n, 259 F.2d at 925.  "An injunction may be justified for example,

where there is a particularly strong likelihood of success on the merits even if there is a relatively

slight showing of irreparable injury." CityFed Fin. Corp., 58 F.3d at 747.  An essential

prerequisite to injunctive relief is a sufficient showing by the plaintiff that she will suffer

irreparable harm if the injunctive relief is not granted.  See, e.g., Davenport, 166 F.3d at 360.

12

II.     **Plaintiff has Failed to Establish a Substantial Likelihood of Prevailing on the Merits**

    A.     **This Court Lacks Jurisdiction over this Action and Venue is Improper**

Sovereign immunity bars all suits against the United States except for those suits permitted by the explicit terms of a statutory waiver of that immunity.  See Lane v. Pena, 518 U.S. 187, 192 (1996).  As the bases for jurisdiction, Plaintiff's Complaint cites 28 U.S.C. § 1331, 28 U.S.C. §§ 2201 and 2202, 18 U.S.C. § 3626, Fed. R. Civ. Pro. 65, and the U.S. Constitution. See Compl. at 2, ¶ 4.  None of these provisions give this Court jurisdiction over this action.

    1.     **Plaintiff May Only Proceed through a Writ of Habeas Corpus Against his Warden Brought in a Court with Jurisdiction over the Warden**

It is well established that habeas corpus is the exclusive remedy for any prisoner who seeks to gain earlier release or even to improve his chances of earlier release.  See, e.g., Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (habeas is the exclusive remedy if the success of the action "would necessarily demonstrate the invalidity or confinement or its duration"); Nelson v. Campbell, 541 U.S. 637, 643 (2004) (explaining that "where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence" he or she should rely on the habeas corpus statute because "[s]uch claims fall within the 'core' of habeas corpus."); Bourke v. Hawk-Sawyer, 269 F.3d 1072, 1074 (D.C. Cir. 2001) (even where a prisoner's claim that he was illegally denied a chance to secure his release would not necessarily result in his being released any earlier, it would raise that possibility and thus have a probabilistic impact on the duration of his custody, requiring that he resort to habeas in the jurisdiction of his incarceration); Razzoli v. Federal Bureau of Prisons, 230 F.3d 371, 373 (D.C. Cir. 2000) (concluding that "[f]or a federal

prisoner, habeas is indeed exclusive even when a non-habeas claim would have a merely probabilistic impact on the duration of custody"); <u>Chatman-Bey v. Thornburgh</u>, 864 F.2d 804, 809 (D.C. Cir. 1988) (en banc) (holding that a federal prisoner seeking to challenge his parole eligibility date was required to proceed in habeas, even though success upon his claims would not necessarily result in his earlier release); <u>see also</u> <u>Dominguez v. BOP</u>, 2006 W.L. 1445041, *3 (D.D.C. 2006); <u>McGlamary v. Lappin</u>, 2006 W.L. 1382185, *1, n.1 (D.D.C. 2006); <u>Boyer v. Conaboy</u>, 983 F. Supp. 4 (D.D.C. 1997) ("[t]he Court will reaffirm a principle that has unwaveringly governed federal-court practice for almost a quarter-century: that a prisoner who attacks the legality or duration of his sentence must proceed by habeas corpus"); <u>Bayless v. United States Parole Commission</u>, 1996 W.L. 525325, *7 (D.D.C. 1996).

In this case, Plaintiff is clearly contesting the length of his confinement.[3]  It is uncontroverted that Plaintiff has been allowed to participate in the RDAP program a second time, and that is not at issue in this action. <u>See</u>, <u>e.g.</u>, Complaint at 3, ¶ 13 (acknowledging that the BOP "admitted Plaintiff to the March 2006 'cohort' of RDAP"); Mot. for TRO at 2, ¶ 5 (same); Mot.

_____

[3]  <u>See</u>, <u>e.g.</u>, Complaint at 4, ¶ 20 ("Accordingly, the Bureau has determined improperly that Kotz is ineligible for sentence reduction pursuant to § 3621(e)"); <u>id.</u> at 5,  ¶ 24 ("Plaintiff will suffer irreparable harm because of this BOP policy of denying a sentence reduction to plaintiff based on the regulation not in effect"); <u>id.</u> at 5, ¶ 25 ("If this Court does not grant a declaratory judgment declaring that BOP's denial of plaintiff's entitlement for consideration of a sentence reduction, he will be deprived of equal protection and due process of law and will be irreparably harmed"); <u>id.</u> at 5 ("plaintiff requests that the Court issue a declaratory judgment declaring that the BOP's denial of plaintiff's entitlement for consideration of a sentence reduction was improper and granting injunctive relief to require BOP to consider reduction of sentence . . ."); <u>see also</u> Pl.'s Mot. for TRO at 5 (alleging that "[t]he Plaintiff [w]ill [s]uffer [i]rreperable [h]arm [i]f [h]e [i]s [n]ot [m]ade [e]ligible [f]or [a] [s]entence [r]eduction"), 10 (seeking an injunction "enjoining the BOP from depriving him of eligibility for the sentence reduction"); Pl.'s Motion for Preliminary Injunction (seeking a preliminary injunction "requiring the [BOP] to reverse the denial of a reduction in sentence for plaintiff's participation in the RDAP program.")

for TRO at 8; Declaration of Paul C. Kurtz at 6, ¶ 6. All that is at issue is whether Plaintiff will

be eligible for a sentence reduction as a result of his participation in the program.  It has long

been established in this Circuit that a federal prisoner's attack on the "fact or duration" of his

confinement is relegated to habeas relief which must be brought in the federal district of

incarceration.  See Chatman-Bey, 864 F.2d 804 (D.C. Cir. 1988) (en banc).   In Chatman-Bey,

this Court stated:

> [The U.S. Supreme Court case of Preiser v. Rodriguez] . . . makes clear that, as a matter
> of Congressional intent, prisoners mounting a challenge to the lawfulness of their custody
> are to proceed by means of habeas.

Chatman-Bey, 864 F.2d at 809 (citing Preiser v. Rodriguez, 411 U.S. 475 (1973).

In Guerra v. Meese, 786 F.2d 414 (D.C. Cir. 1986), this Court held that a district court

may not entertain a habeas corpus action unless it has personal jurisdiction over the custodian of

the prisoner.  See also Chatman-Bey, 864 F.2d at 810 (reaffirming that "the appropriate

defendant in a habeas action is the custodian of the prisoner," and also holding that the

"custodian" of a federal prisoner seeking release on parole is the warden of the prison in which

he is confined); Blair-Bey v. Quick, 151 F.3d 1036, 1039 (D.C. Cir. 1998) (same); see

Anyanwutaku v. Moore, 151 F.3d 1053, 1055 (D.C. Cir. 1998); see also Rumsfeld v. Padilla, 542

U.S. 426, 447 (2004) (explaining that "[w]henever a § 2241 habeas petitioner seeks to challenge

his present physical custody within the United States, he should name his warden as respondent

and file the petition in the district of confinement."); Stokes v. U.S. Parole Comm'n, 374 F.3d

1235, 1237-38 (D.C. Cir. 2004) (noting that "[b]ecause '[a] writ of habeas corpus does not act

upon the prisoner who seeks relief, but upon the person who holds him in ... custody,' . . . a court

may issue the writ only if it has jurisdiction over that person," the warden of the facility in which

15

the inmate is incarcerated) (internal citations omitted); <u>Dominguez</u>, 2006 W.L. at *3.

In this instance, Plaintiff is held in Maryland, not the District of Columbia.  <u>See</u>, <u>e.g.</u>, Complaint at 1, ¶ 1;Complaint at 3, ¶ 12; Pl.'s Mot. For TRO at 2, ¶ 4; Declaration of Paul C. Kurtz at 2-3, ¶¶ 5-8 ; Ex. A, Declaration of Bruce Plumley, ¶¶ 4-5 (May 10, 2007); Ex. B, Declaration of H. Leon Bryan, ¶ 3.  Thus, venue in this jurisdiction is not proper.  Nor has Plaintiff named his Warden as a defendant as required.  And this Court could not exercise jurisdiction over the Warden even if the Warden was named as a Defendant.  For this reason, Plaintiff's action should be dismissed.  <u>See</u> Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3).

Only if the Court has jurisdiction over the Plaintiff's custodian may it afford meaningful relief, and then it would be in the context of habeas relief.  Plaintiff's action should be dismissed in part because he failed to join his Warden as the Defendant.[4]  When an inmate in a federal prison files a civil action in the District of Columbia challenging the lawfulness of his custody, his case must either be dismissed or transferred to the jurisdiction where the prisoner's immediate custodian is located.  <u>See</u> <u>Bourke v. Hawk Sawyer</u>, 269 F.3d 1074; <u>In re Tripati</u>, 836 F.2d 1406, 1407 (D.C. Cir. 1988); <u>Guerra</u> v. <u>Meese</u>, 786 F.2d 414 (D.C. Cir. 1986).

### 2.     The Administrative Procedure Act does not Give this Court Jurisdiction over this Action and Does Not Apply to It

Although Plaintiff does not explicitly claim that the Administrative Procedure Act

---

[4] Fed. R. Civ. P. 12(b)(7) calls for dismissal for "failure to join a party under Rule 19." That rule, in turn, calls for joinder of persons if, "in the person's absence complete relief cannot be accorded among those already parties".  Fed. R. Civ. P. 19(a).  Where the person cannot be made a party, but is indispensable, the court shall dismiss the matter.  Fed. R. Civ. P. 19(b).  As noted above, the prisoner's custodian is a necessary party in an action such as this.

("APA") gives this Court jurisdiction over his action, Plaintiff advances arguments which appear to assume that it applies to his action.  Specifically, Plaintiff argues that the BOP's decision that he is not eligible for a second sentence reduction based on the fact that he previously received a sentence reduction due to participation in the RDAP was  arbitrary and capricious, under the APA.  See Pl.'s Mot. for TRO at 8.  Plaintiff also argues that the BOP violated the notice and comment requirements of the APA.  See Complaint at 4, ¶ 21; Pl.'s Mot. for TRO at 7.

In fact, the APA is not a source of jurisdiction for Plaintiff's action.   Nor is the APA even applicable to Plaintiff's action.

The conclusion that habeas is the sole remedy for a challenge to a BOP action which affects the duration of a prisoner's confinement applies equally to a claim brought under the APA.  See LoBue v. Christopher, 82 F.3d 1081, 1082-84 (D.C. Cir. 1996) (where the plaintiff has available a habeas remedy in another district, he cannot pursue declaratory relief in the District of Columbia).  Indeed, in LoBue, the Court recognized that another panel of the Court had allowed a claim to proceed by way of the APA when habeas was also available,[5] but noted that more recent Supreme Court authority[6] had undercut the ability of a prisoner to rely on the APA in such circumstances.  LoBue v. Christopher, 82 F.3d at 1083.

The APA does not apply to decisions made by the BOP in connection with the imprisonment of an individual.  See 18 U.S.C. § 3625 (providing that "[t]he Provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, [i.e., the APA] do not

---

[5] See Hurley v. Reed, 288 F.2d 844 (D.C. Cir. 1961).

[6]  See Califano v. Sanders, 430 U.S. 99, 104-107 (1977) (rejecting the idea that section 10 of the APA is a grant of jurisdiction).

17

apply to the making of any determination, decision, or order under this subchapter"); <u>Tanner v. BOP</u>, 433 F. Supp.117, 122, n. 5 (D.D.C. 2006) (noting that "the APA is inapplicable to matters of imprisonment"); <u>Council of Prison Locals v. Howlett</u>, 562 F. Supp. 849, n. 4 (D.D.C. 1983) ("It is by now well settled that neither the Administrative Procedure Act nor the Declaratory Judgment Act . . . independently afford federal jurisdiction") (internal citations omitted). The APA is not a grant of subject matter jurisdiction that trumps the habeas corpus statute when the issue is the fact or duration of physical imprisonment. <u>See</u> <u>Billiteri v. U.S. Board of Parole</u>, 541 F.2d 938, 946 (2nd Cir. 1976). For instance, a prisoner gains judicial review of a parole denial by bringing a habeas petition. <u>See</u> <u>Brown v. Lundgren</u>, 528 F.2d 1050, 1054 (5th Cir. 1976).

Plaintiff is apparently challenging the fact or duration of his custody when he challenges as arbitrary and capricious, under the APA, the BOP's decision that he is not eligible for a second sentence reduction based on the fact that he previously received a sentence reduction due to participation in the RDAP. <u>See</u> Pl.'s Mot. for TRO at 8. Because Plaintiff is seeking relief that would raise that possibility of earlier release and thus have a "probabilistic impact" upon the duration of his custody, he may only proceed by way of a petition for habeas relief. <u>See</u> <u>Bourke v. Hawk Sawyer</u>, 269 F.3d 1072, 1074 (D.C. Cir. 2001); <u>Razzoli</u>, 230 F.3d at 376 ("a habeas challenge must be brought against the custodian, a rule that channels such claims into the federal court with jurisdiction over the claimant's prison") (emphasis in original); <u>Chatman-Bey</u>, 864 F.2d at 809.

On the other hand, if the resolution of the challenges Plaintiff raises to BOP's RDAP early release decision will not affect his release, then he is barred from litigating them in Federal Court for both statutory and constitutional reasons. Under the APA, even if it applied, such

18

inconsequential errors are harmless.  See 5 U.S.C. § 706[7]; Gerber v. Babbitt, 146 F. Supp.2d 1, 4-

5 (D.D.C. 2001) (procedural violation that clearly had no bearing on the substance of the decision

reached was harmless) (citing 5 U.S.C. § 706; Steel Mfrs. Ass'n v. EPA, 27 F.3d 642, 649 (D.C.

Cir. 1994); and Chemical Mfrs. Ass'n v. EPA, 870 F.2d 177, 202, clarified, 885 F.2d 253 (5th

Cir. 1989)).  Under Article III of the Constitution, the federal courts have jurisdiction only over

cases or controversies, may not render advisory opinions and must, accordingly, assess whether it

may afford meaningful relief.  See McBryde v. Committee to Review Circuit Council Conduct

and Disability Orders of Judicial Conference of U.S., 264 F.3d 52, 55 (D.C. Cir. 2001).  Only if

the District Court has jurisdiction over the Plaintiff's custodian may it afford meaningful relief,

and then it would be in the context of habeas relief.  See Rumsfeld v. Padilla, 542 U.S. 426, 447

(2004).

Thus, under Chatman-Bey, supra, Plaintiff's complaint sounds in habeas corpus, and

cannot proceed as a civil complaint.  When an inmate in a federal prison files a civil action in the

District of Columbia challenging the lawfulness of his custody, his case must either be dismissed

or transferred to the jurisdiction where the prisoner's immediate custodian is located.  See

Bourke v. Hawk Sawyer, 269 F.3d at 1074; In re Tripati, 836 F.2d at 1407; Guerra v. Meese, 786

F.2d 414 (D.C. Cir. 1986).  The District Court could allow transfer, but given the meritless nature

of Plaintiff's claims, it should find that transfer would be a fruitless endeavor.

---

[7]  In making the determinations under section 706, the reviewing court shall review the
whole record or those parts of it cited by a party, and "due account shall be taken of the rule of
prejudicial error."  See  5 U.S.C. § 706 (emphasis added).

3.    **The Declaratory Judgment Act does Not Give this Court Jurisdiction over Plaintiff's Action**

Plaintiff also seeks declaratory relief pursuant to the Declaratory Judgment Act. The Declaratory Judgment Act creates a remedy, for Plaintiff, but it is not a waiver of sovereign immunity as to the United States. See, e.g., Balisterieri v. United States, 303 F. 2d 617 (7th Cir. 1962); Tashimi v. Administrative Office of the United States Courts, 719 F. Supp. 881, 887, aff'd 967 F. 2d 1264 (9th Cir. 1989); Council of Prison Locals v. Howlett, 562 F. Supp. 849, n. 4 (D.D.C. 1983).

B.    **Plaintiff has Failed to Exhaust his Administrative Remedies under the Prison Litigation Reform Act and Implementing Regulations**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. §1997e(a). In Booth v. Churner, 531 U.S. 731, 740-41& n. 6 (2001), a unanimous Supreme Court held that Congress mandated completion of any prison administrative remedy process capable of addressing the inmate's complaint and providing some form of relief, "irrespective of the forms of relief sought and offered through administrative avenues." See also Jackson v. District of Columbia, 254 F.3d 262, 270-271 (D.C. Cir. 2001); Smith v. Zachary, 255 F.3d 446, 451 (7th Cir. 2001); Yousef v. Reno, 254 F.3d 1214 (10th Cir. 2001). The Supreme Court's decision in Porter v. Nussle, 534 U.S. 516 (2002) followed Booth. In Porter, the Court reiterated this requirement stating

20

". . . exhaustion in cases covered by § 1997e(a) is . . . mandatory. . ." <u>Id.</u>  The Supreme Court, in

<u>Porter</u>, explained the purposes behind the exhaustion requirement:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.  In other instances, the internal review might filter out some frivolous claims.  And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

<u>Porter v. Nussle</u>, 534 U.S. 524-525.  In 2006, the Supreme Court reiterated that in the PLRA

context, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory."

<u>See</u> <u>Woodford v. Ngo</u>, 126 S. Ct. 2378, 2382 (2006).

Here, the three-level administrative remedy process used in the federal prison system and

applicable to this matter is nearly identical to that at issue in <u>Booth</u>.  <u>Compare</u> <u>Booth</u>, 532 U.S. at

734 <u>with</u> 28 C.F.R. § 542.10 *et seq*.  The BOP's regulations require inmates first to attempt

resolution of their complaints informally by discussing the matter with a member of their Unit

Team.  <u>See</u> 28 C.F.R. § 542.13.  If informal resolution is insufficient to resolve the matter, the

inmate may file a formal complaint with the Warden within 20 days of the date on which the

basis of the complaint occurred.  28 C.F.R. § 542.14.  If the inmate is not satisfied with the

Warden's response, he may appeal the response to the Regional Director within 20 days of the

Warden's decision.  28 C.F.R. § 542.15.  If the inmate is dissatisfied with the regional response,

the prisoner may then file a national appeal with the Office of General Counsel in Washington,

D.C., within 30 days of the date of the Regional Director's decision.  <u>See</u> 28 C.F.R. § 542.15.

Appeal to the Office of General Counsel is the final administrative appeal in the BOP.

In the instant case, Plaintiff has failed to properly exhaust his administrative remedies. See, e.g., Plumley Decl., Ex. A, ¶ 6. Plaintiff's failure to exhaust is one of many reasons that he has a very low likelihood of success on the merits. Moreover, Plaintiff's action should be dismissed for failure to exhaust administrative remedies under the PLRA and implementing regulations. See Fed. R. Fed. R. Civ. P. 12(b)(1).

Plaintiff asserts that he exhausted the BOP administrative remedies. See Pl.'s Mot. for TRO at 8-10; Complaint at 3-4, ¶¶ 15-16. He explains that on March 23, 2006, Mr. Kurtz on his behalf, sent a letter to Dr. Simpson requesting a second sentence reduction which was denied. Id. He contends that he appealed this request to John Vanyur, who also denied the request. Id.

In fact, Plaintiff clearly has not yet exhausted the BOP administrative remedy procedures available to him. See 28 C.F.R. §§ 542.10-542.19; Declaration of Bruce Plumley at 1-3, ¶¶ 2-4, 6. On January 23, 2006, in the final agency decision at issue in this case, Mr. Kotz was informed in writing that while qualified to enroll in the RDAP program, he was ineligible for a second sentence reduction under 18 U.S.C. § 3621(e) because he had previously received an early release pursuant to that provision once before. See Residential Drug Abuse Program Notice to Inmate (January 23, 2006); Ex. B, Declaration of H. Leon Bryan, ¶¶ 1-3; Pl.'s Mot. for TRO at 2-3. The BOP's SENTRY database indicates that as of May 10, 2007, Mr. Kotz had not personally filed any Requests for Administrative Remedy challenging this or any other determination since his incarceration on his most recent sentence and SRT revocation term. See Ex. A, Declaration of Bruce Plumley, ¶¶ 1, 3-4, 6 (May 10, 2007).

Although Plaintiff never filed any administrative appeals challenging the BOP's determination that he was ineligible for a second sentence reduction, Mr. Kurtz attempted to do

22

so on his behalf.  On February 23, 2006, Mr. Kurtz wrote to Mr. Simpson, the BOP RDAP

Regional Coordinator, requesting that he overrule the January 23, 2006 determination.  See

February 23, 2006 Letter from Paul C. Kurtz to Dr. Simpson (attached as an Exhibit 3 to Pl.'s

Mot. for TRO); see also Pl.'s Mot. for TRO at 2, ¶ 7; Declaration of Paul C. Kurtz, ¶ 8.  Mr. Kotz

subsequently retained an attorney, Plato Cacheris, who sent a letter to the General Counsel of the

BOP, Kathleen Kenney, and to John M. Vanyur, the Assistant Director of the BOP.  See October

11, 2006 Letter from Mr. Vanyur to Mr. Cacheris (attached as an Exhibit 4 to Pl.'s Mot. for

TRO).

There is no indication in the existing record that Mr. Kotz, or either of his representatives

and advocates (Mr. Kurtz and Mr. Caheris) ever filed (1) an informal request at the institution

level, (2) a request with the Warden at the institution where Mr. Kotz is housed, or (3) an appeal

with the Regional Director of the BOP, and Plaintiff has not alleged otherwise.  Neither Dr.

Simpson nor John Vanyur is part of the levels of administrative remedy review (i.e., Warden,

Regional Director, General Counsel) set forth in the BOP's administrative review regulations.

Under Woodford, and a long line of other cases, inmates are bound to complete proper

exhaustion.  Clearly, the Plaintiff failed to do so.  Accordingly, this action must be dismissed.

In support of its argument that it should be excused from the exhaustion requirements,

Plaintiff cites to three cases which arose in entirely different statutory, regulatory, and factual

contexts.  See Pl.'s Mot. for TRO at 9-10 (citing West v. Bergland, 611 F. 2d 710, 715 (8th Cir.

1979) (concerning the Department of Agriculture's administrative procedures); Bowen v. City of

New York, 476 U.S., 467, 484 (1986) (Social Security Disability); Mathews v. Eldridge, 424

U.S. 319, 331, n. 11 (1976) (constitutional challenge to termination of Social Security disability benefits)).

    None of these cases support Plaintiff's position.   Plaintiff omits critical language from its excerpt of the <u>West</u> opinion.  In the passage Plaintiff cites, the Eighth Circuit Explained that "[e]xcept in those cases where exhaustion of administrative remedies is specifically required by statute, . . .  administrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further."  <u>See</u> <u>West v. Bergland</u>, 611 F. 2d at 715 (emphasis added) (internal citation omitted).  As mentioned, this is precisely the situation described in the prefatory exception clause.  The PLRA explicitly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  <u>See</u> 42 U.S.C. §1997e(a); <u>Booth v. Churner</u>, 531 U.S. 731, 740-41& n. 6 (2001); <u>Porter v. Nussle</u>, 534 U.S. 516 (2002);  <u>Jackson v. District of Columbia</u>, 254 F.3d 262, 270-271 (D.C. Cir. 2001).

    At issue in <u>Bowen</u> and <u>Mathews</u> was 42 C.F.R. § 405(g), a provision of the Social Security Act.  Section 405(g) provides that ""[a]ny individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow."  In <u>Mathews</u>, the Supreme Court noted that the requirement that there be a final decision by the Secretary after a hearing "consists of two elements, only one of which is purely 'jurisdictional' in

24

the sense that it cannot be 'waived' by the Secretary in a particular case," with the "[t]he

waivable element is the requirement that the administrative remedies prescribed by the Secretary

be exhausted" and the "[t]he nonwaivable element" being "the requirement that a claim for

benefits shall have been presented to the Secretary."  See Mathews v. Eldridge, 424 U.S. at 328.

As mentioned, the PLRA, unlike section 405(g) is explicit in requiring exhaustion as a

precondition to judicial review.  It clearly is a non-waivable jurisdictional requirement. See 42

U.S.C. §1997e(a); Booth v. Churner, 531 U.S. 731, 740-41& n. 6 (2001); Porter v. Nussle, 534

U.S. 516 (2002);  Jackson v. District of Columbia, 254 F.3d 262, 270-271 (D.C. Cir. 2001).

Because Plaintiff failed to properly exhaust his administrative remedies, as required by the

PLRA, this Court lacks subject matter jurisdiction over this action.  See Fed. R. Civ. P. 12(b) (1).

### C.    Even if the APA Applied, the Program Statement is an Interpretative Rule, Not Subject to the APA's Notice and Comment Requirements

Plaintiff contends that the BOP's Program Statement 5331.01, which deals with eligibility

for sentence reduction, is an invalid agency regulation promulgated without notice and comment

in violation of the APA.  See Complaint at 4, ¶ 21; Pl.'s Mot. for TRO at 7; see Ex. D, Program

Statement 5331.01, Early Release Procedures under 18 U.S.C. § 3621(e) (September 29, 2003).

In relevant part, section 5331.01 provides that "inmates may earn an early release for successful

RDAP completion only once."  Id. at ¶ 5(c).  Plaintiff argues that the Program Statement is

inconsistent with 28 C.F.R. § 550.58, which provides that an inmate who has been sentenced to a

term of imprisonment for a nonviolent offense, who is determined to have a substance abuse

problem, and who successfully completes an RDAP "may" be eligible for a sentence reduction of

up to one year.  See 28 C.F.R. § 550.58; Complaint at 4-5, ¶¶ 21-22; Pl.'s Mot. for TRO at 7-8.

Plaintiff also alleges that Program Statement 5331.01 is inconsistent with Program Statement

5330.10, a BOP policy which delineates the participation eligibility in the RDAP to support his

proposition that he was improperly denied a sentence reduction.  See Complaint at 4, ¶¶ 18-20;

Pl.'s Mot. for TRO at 7.

     The APA provides that what have come to have been known as substantive or legislative

rules are subject to certain procedural requirements.  See 5 U.S.C. § 553(b).  Promulgation of

such rules must be accompanied by (1) advance publication in the Federal Register,

(2) opportunity for the public to comment, and (3) publication of the final rule, incorporating a

concise statement of its basis and purpose, at least thirty days before its effective date.  See 5

U.S.C. §§ 553(b) and (c).   These requirements, however, do not apply to "interpretative rules,

general statements of policy, or rules of agency organization, procedure, or practice."  See 5

U.S.C. § 553(b)(3)(A).  Because Program Statement 5331.01 is an interpretative rule, it does not

need to be promulgated through notice and comment procedures, even if the APA applies to this

action.

     Program Statement 5331.01 is a prototypical example of an interpretative rule.  The

Supreme Court noted, in Shalala v. Guernsey Memorial Hosp., 514 U.S. 87, 99 (1995), that

interpretative rules are those "issued by an agency to advise the public of the agency's

construction of the statutes and rules which it administers."  Id. at 99.  Such rules do not effect a

"substantive change" which is inconsistent with existing regulations.  Id.

In <u>American Mining Congress v. Mine Safety & Health Administration</u>, 995 F. 2d 1106

(D.C. Cir. 1993), this Circuit articulated a four part test for determining whether a rule is

interpretative or substantive:

> insofar as our cases can be reconciled at all, we think it almost exclusively on the basis of
> whether the purported interpretive rule has "legal effect,"which in turn is best ascertained
> by asking (1) whether in the absence of the rule there would not be an adequate legislative
> basis for enforcement action or other agency action to confer benefits or ensure the
> performance of duties, (2) whether the agency has published the rule in the Code of
> Federal Regulations, (3) whether the agency has explicitly invoked its general legislative
> authority, or (4) whether the rule effectively amends a prior legislative rule. If the answer
> to any of these questions is affirmative, we have a legislative, not an interpretive rule.

<u>Id</u>. at 1112.

Applying this test, it becomes apparent that Program Statement 5331.01 has all of the

hallmarks of a classic interpretative rule.  First, it is clear that, even in the absence of the Program

Statement, there would have been an adequate legislative basis for limiting inmates to one early

release pursuant to 18 U.S.C. § 3621(e).  The Courts have recognized that this permissively

worded provision vests the BOP with broad discretionary authority to determine whether a

sentence reduction is warranted in any given case or circumstance.  <u>See</u>, <u>e.g.</u>, <u>Lopez v. Davis</u>, 531

U.S. 230, 241 (2001) (observing that "[w]hen an eligible prisoner successfully completes drug

treatment, the Bureau . . . has the authority, but not the duty, both to alter the prisoner's

conditions of confinement and to reduce his term of imprisonment"); <u>id</u>. at 243-44 (rejecting the

argument that the BOP must not make categorical exclusions, but may rely only on case-by-case

assessments); <u>Jasperson v. Federal Bureau of Prisons</u>, 460 F.Supp.2d 76, 90 (D.D.C. 2006)

(explaining that "18 U.S.C. § 3621(e)(2)(B) . . . grants unfettered discretion to BOP," and that

"[t]he subsection requires nothing."); <u>U.S. v. Coates</u>, 295 F.Supp.2d 11, 22 (D.D.C. 2003)

(finding that "[t]he discretion to grant an early release under 18 U.S.C. § 3621(e)(2)(B) lies with the BOP, not with the Court, and the exercise of that discretion is not mandatory even if the BOP finds that the prisoner has met the criteria for early release").   Second, the Program Statement was issued in an informal document, rather than in the Code of Federal Regulations.   Third, the BOP did not invoke its rulemaking authority in issuing the Program Statement.   Finally, the Program Statement effected no change, substantive or otherwise, that is inconsistent with the existing regulations.   While Plaintiff alleges that the Program Statement 5331.01 was inconsistent with another Program Statement, he has not suggested that the Program Statement is contrary to any legislative rule.  Thus, Program Statement 5331.01 is simply an interpretative rule under the law of this Circuit.  See American Mining Congress, 995 F. 2d at 1112.

**D.     Even if the APA applies here, Plaintiff has not Shown that the BOP's Actions were Arbitrary and Capricious**

Plaintiff asserts the BOP's denial of his request for a second sentence reduction is arbitrary and capricious.  See Pl.'s Mot. For TRO at 8.  Here, the BOP has promulgated a policy which is consistent with the statutory mandate, to offer sentence reductions to eligible inmates in federal prisons.  Under the BOP policy, procedures have been implemented in order to execute the Congressional mandate in § 3621(e).  Pursuant to the statute, the BOP has determined that inmates who previously benefitted from a sentence reduction should not obtain that benefit a second time.  There is no clear error of judgment in this case that would merit reversing the BOP's decision to deny this Plaintiff a second sentence reduction in this area in which Congress has vested the BOP with unfettered discretion to make decisions.  The BOP has not abused its

discretion and the Plaintiff cannot establish that any of the BOP's actions were arbitrary or capricious.  This is a reasonable construction of the statute and the BOP's policies are not arbitrary and capricious.  See, e.g., Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto Ins. Co., 463 U.S. 39, 43 (1983) ("[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."); Southern Co. Services, Inc. v. FCC, 313 F. 3d 574, 579-80 (D.C. Cir. 2002); HCA Health Servs. Of Okla., Inc. v. Shalala, 27 F. 3d 614, 616-17 (D.C. Cir. 1994); Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984); Auer v. Robbins,  519 U.S. 452, 461-463 (1997); Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994).

### E.    Plaintiff has not Established that his Due Process and Equal Protection Rights have been Violated

Plaintiff contends that he has valid due process and equal protection claims with regard to the section 3621(e) sentence reduction because the BOP improperly applied Program Statement 5331.01. See Complaint at 5, ¶ 25; Pl.'s Mot. for TRO at 6.[8]

Inmates do not have a liberty interest in section 3621(e)(2)(B) reductions.  See Sandin v. Connor, 515 U.S. 472 (1995); Miller v. United States, 964 F. Supp. 15 (D.D.C. 1997); Dozier v. Daniels, 2005 WL 1706402 , *1 (9th Cir. 2005) (finding that the inmate there had "not shown that the Bureau of Prisons violated his due process rights" and observing that he "has no liberty

---

[8] In his Complaint, Plaintiff alleges that "[i]f the Court does not grant a declaratory judgment declaring that the BOP's denial of plaintiff's entitlement for consideration of a sentence reduction" was improper, he will be deprived of, among other things, equal protection. See Complaint at 5, ¶ 25.  Other than this one conclusory statement, Plaintiff does not expand on or explain his equal protection challenge anywhere in his pleadings.

interest in the discretionary sentence reduction available under 18 U.S.C. § 3621(e)(2)(B)");

Jacks v. Crabtree, 114 F.3d 983, 986 n. 4 (9th Cir.1997).

Within the context of § 3621(e) and resulting BOP regulations, one Circuit Court has

explained that

> [a] protected liberty interest exists only when a regulation uses 'mandatory language to place a substantive limit on official discretion.' . . . There is no mandatory language requiring that inmates be released upon completion of the drug-treatment program, and thus [petitioner] had no protected liberty interest in receiving a § 3621(e)(2)(B) sentence reduction.

Rublee v. Fleming, 160 F.3d 213, 217 (5th Cir.,1998) (internal citations omitted); see also Lopez

v. Davis, 531 U.S. 230 (2001) (noting that "Congress's choice of permissive language indicates

that the BOP has the authority, but not the duty, . . . to reduce [the prisoner's] term of

imprisonment,'" and that "the BOP is free to make categorical determinations of eligibility,

which avoids the 'favoritism, disunity, and inconsistency'").  Thus, Plaintiff's argument that his

constitutional rights were violated when he did not receive a second sentence reduction is clearly

without merit.

Plaintiff also suggests that a protected liberty interest may have arisen from statements by

BOP personnel and the BOP's policies.  See, e.g., Pl.'s Mot. for TRO at 6-8.  Specifically,

Plaintiff claims that Program Statement 5330.10 suggested that he was eligible for a sentence

reduction.  Id.  Plaintiff also has submitted a declaration by Paul Kurtz which contends that a

BOP official, Samuel Betts, "stated that . . . Kotz's prior participation in the [RDAP] program

would not have any effect on his eligibility for a sentence reduction under § 3621(e) should he be

accepted in RDAP a second time."  See Declaration of Paul Kurtz at 2, ¶ 4.  Attached to that

declaration however is a December 16, 2005 letter from Mr. Kurtz to Dr. Simpson of the BOP

which undercuts this claim.  In that letter, Mr. Kurtz states that in fact "[i]n July 2005" when he was "in contact with Samuel Betts . . . to establish that Mr. Kotz would be eligible to participate in RDAP a second time," he "was assured that his prior participation would not affect his current eligibility.  See Exhibit 1 to Paul Kurtz Declaration, Attached to Pl.'s Mot. for TRO (emphasis added).  Thus, it is clear that Mr. Kurtz's own contemporaneous understanding of his conversation with Mr. Betts was that Mr. Betts was referring to Mr. Kotz's eligibility for the RDAP program, not for a sentence reduction.  Id.  Indeed, the letter contains no reference to sentence reduction.  Id.

The two Program Statements Plaintiff references make clear that although an inmate's previous participation in RDAP does not preclude future participation in the program, only one sentence reduction will be granted based on participation in the RDAP.  Thus, Plaintiff has failed to establish that his due process and equal protection rights have been violated.

Thus, Plaintiff has failed to establish that he satisfied for first prong of the test for a PI and TRO, the requirement that he demonstrate a substantial likelihood of success on the merits.  For many of the same reasons, Plaintiff has also failed to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

**III.    Plaintiff has Failed to Show that He will Suffer an Irreparable Injury if a TRO or PI is not Granted**

Plaintiff alleges that he will suffer an irreparable harm if he is not made eligible for a sentence reduction because "plaintiff Kotz has less than two years on his sentence as imposed and, with the RDAP program factored in, will be quite close to the expiration of his term if a

sentence reduction under RDAP is granted" so that "[i]f relief is not granted soon, plaintiff will have no remedy."  See Pl.'s Mot. for TRO at 5.

In fact, no irreparable injury will occur to Mr. Kotz as he is already required to serve the sentence imposed by the court.  Plaintiff is not prejudiced in any way.  Denial of the sentence reduction does not increase the amount of punishment the Court already imposed.  He will just serve the amount of time imposed by the Court.

Plaintiff was sentenced on a revocation of supervised release, during which he committed a criminal offense.  He already benefitted from a sentence reduction once before, for the underlying offense, which was an incentive to deter him from future criminal actions but apparently did not succeed in rehabilitating him, as evidenced by his second conviction. The early release provision, at section 3621(e), is intended to provide an incentive to entice inmates to volunteer to participate in the program, but it is not a method for receiving multiple early releases.  See Ex. C, Declaration of Beth Weinman, ¶¶ 3-4.  Here, Plaintiff has already received an individual sentence reduction.  He cannot obtain a second reduction and has suffered no irreparable injury.


**IV.    An Injunction Would Substantially Injure Another Interested Party, the BOP, as it would Impede the BOP's Ability to Run its Prisons**

An injunction would substantially impair BOP's ability to conduct the operation of its prisons.  As the courts have consistently recognized, BOP must be accorded wide discretion in how to run the nation's federal prisons.  See, e.g., Pitts v. Thornburgh, 866 F.2d 1450, 1454 (D.C. Cir. 1989) ("the Court in Turner stressed the discretion to be accorded prison officials in

32

'mak[ing] the difficult judgments concerning institutional operations,' <u>Turner</u>, 107 S. Ct. 2261 (quoting <u>Jones</u>, 433 U.S. at 128, 97 S. Ct. at 2539), and warned that '[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration.' <u>Id.</u> 107 S. Ct. at 2262.").

The PI and TRO sought by Plaintiff here would set a precedent under which inmates could routinely challenge sentence reduction denials under section 3621(e).  This is a far cry from maintaining the *status quo* and it would seriously impair BOP's ability to perform the various functions that necessarily entail sentence reductions.  <u>See also</u> 18 U.S.C. § 3626(a)(2) ("The court shall give substantial with to any adverse impact on . . . the operation of a criminal justice system caused by the preliminary relief").  Thus, this factor also weighs against the TRO and PI which Plaintiff seeks.


## V.    The Public Interest Would Be Harmed Not Furthered by the Injunction

Finally, the precipitous action requested by Plaintiff is not in the public interest, even if his allegations were true.

The Courts have long recognized that the public has a strong interest in promoting and facilitating public safety, flexible prison administration, deterrence, and punishment.[9]  These

---

[9]    <u>See</u>, <u>e.g.</u>, <u>Sandin v. Connor</u>, 515 U.S. 472, 482-83 (1995) ("[F]ederal courts ought to afford appropriate deference and flexibility to [prison] officials trying to manage a volatile [prison] environment," and that "such flexibility is especially warranted in the fine tuning of the ordinary incidents of prison life,' in order that the Courts do not "micro manage" prisons") (internal citations omitted); <u>U.S. v. Salerno</u>, 481 U.S. 739, 749 (1987) ("[t]he government's interest in preventing crime by arrestees is both legitimate and compelling."); <u>Pell v. Procunier</u>,

(continued...)

interests all militate strongly against this Court granting a TRO and/or PI to Plaintiff in this case. They surely outweigh the only public interest Plaintiff can seriously advance in support of his requested relief – the rather small benefit to society associated with encouraging Plaintiff, a two time convicted offender, to participate in a drug rehabilitation program which he has already benefitted from once before, through the award of a sentence reduction which he has already received once before.

In addition, the nature and severity of the alleged violation does not rise to the level of a constitutional violation or one that seriously threatens the life, health, or safety of Plaintiff.  In sum, all four factors weigh heavily against the requested TRO and PI, and the Court should deny Plaintiff's Motions for both forms of extraordinary relief.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's action, and deny Plaintiff's Motions for a Temporary Restraining Order and for a Preliminary Injunction because Plaintiff fails to meet the stringent standards for obtaining such relief.

---

[9](...continued)
417 U.S. 817, 822-23 (1974) (observing that "An important function of the corrections system is the deterrence of crime," that "[t]he premise is that by confining criminal offenders in a facility where they are isolated from the rest of society, a condition that most people presumably find undesirable, they and others will be deterred from committing additional criminal offenses" and explaining that "[t]his isolation, of course, also serves a protective function by quarantining criminal offenders for a given period of time while, it is hoped, the rehabilitative processes of the corrections system work to correct the offender's demonstrated criminal proclivity."); Bearden v. Georgia, 461 U.S. 660, 669 (1983) ("The State, of course, has a fundamental interest in appropriately punishing persons-rich and poor-who violate its criminal laws.")

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


/s/
WYNEVA JOHNSON, D.C. BAR # 278515
Assistant United States Attorney
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4106
Washington, D.C. 20530
(202) 514-7224


/s/
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

Of Counsel:

Alma Lopez Assistant General Counsel
Office of the General Counsel
Litigation Branch
Bureau of Prisons

35

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Defendants' Motion to Dismiss and

*Memorandum in Support of Defendants' Motion to Dismiss, and in Opposition to Plaintiff's Motions for*

*a Temporary Restraining Order and a Preliminary Injunction* was sent by the Court's Electronic Case

Filing System, this ___ day of May, 2007 to:

Brian W. Shaughnessy
913 M Street, N.W.
Suite 101
Washington, D.C. 20001

                              /s/ Jonathan C. Brumer
                              _____
                              JONATHAN C. BRUMER
                              Special Assistant United States Attorney

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALVIN KOTZ,                          )
        Plaintiff,                )
                          )
                          )
        v.                          )     CIVIL ACTION 07-CV-00856
                          )
                          )
HARLEY LAPPIN,                       )
        Defendant.                  )
_____)

## DECLARATION OF BRUCE PLUMLEY

    In accordance with 28 U.S.C. § 1746, I, Bruce Plumley, make
the following unsworn declaration, under penalty of perjury,
pertinent to the above styled and numbered cause:


    1.   I am an administrative Remedy Specialist for the
Federal Bureau of Prisons (BOP) in Washington, D.C., and have
been employed with the BOP since April 4, 2004.


    2.   The Bureau of Prisons administrative remedy procedure
is set out at 28 C.F.R. § 542.10 et seq., and provides formal
review of any complaint which relates to any aspect of the
inmate's confinement.  Under this process, inmates are encouraged
to first attempt resolution of their complaints informally by
discussing the matter with a member of their Unit Team.  A record
of that attempt is signed by the inmate and a member of the Unit
Team.  If informal resolution is insufficient to resolve the

matter, the inmate may file a formal complaint with the Warden within twenty days of the date on which the basis of the complaint occurred.  28 C.F.R. § 542.13.  If the inmate is not satisfied with the Warden's response, he or she may appeal the response to the Regional Director.  If the inmate is dissatisfied with the regional response, he or she may file a national appeal with the Office of General Counsel in Washington, D.C.  28 C.F.R. § 542.14.  Appeal to the Office of General Counsel is the final administrative appeal in the Bureau of Prisons.

3.    As Administrative Remedy Specialist, I have access to the BOP database known as SENTRY.  All administrative remedy requests and appeals filed by Bureau of Prisons' inmates are logged and maintained in SENTRY.

4.    I have reviewed the administrative remedy requests filed by the Plaintiff Alvin Kotz, Register Number 16577-016.

5.    The Plaintiff has been incarcerated with the BOP on two occasions.  He was released on June 8, 1999, pursuant to 18 U.S.C. § 3621(e), with a 10-year term of supervised release (SRT).  91-246-1.  He violated the conditions of his supervised release with new offense conduct, resulting in a new sentence of 36 months, and a concurrent 20-month term for violating his SRT. DKC-05-0119 and 91-246-1.

6.    A review of the Administrative Remedy Index reveals Plaintiff has not filed any Requests for Administrative Remedy since his incarceration on his most current sentence and SRT revocation term.  Plaintiff has not fulfilled the exhaustion requirement regarding the Administrative Remedy Program.

In accordance with 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: *10 MAY 07*

_____
BRUCE PLUMLEY
Administrative Remedy Specialist
Office of General Counsel

Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALVIN KOTZ,

        Petitioner,

            v.                  Case No.: 07-CV-00856 (RMU)

HARLEY LAPPIN, ET AL.,

        Respondent.

## DECLARATION OF H. LEON BRYAN

In accordance with the provisions of Section 1746 of Title 28, United States Code, I, the undersigned, H. Leon Bryan, do hereby make the following unsworn declaration, under penalty of perjury, pertinent to the above-styled cause:

1. I am currently employed by the United States Government, Federal Bureau of Prisons, as the Drug Abuse Program Coordinator at the Federal Correctional Institution (FCI) Cumberland, in Maryland. I have held this position for approximately 7 years.

2. I am responsible for the administration Residential Drug Abuse Program (RDAP) at FCI Cumberland and am familiar with the applicable statutes, regulations, and policies. These statutes, regulations, and policies afford the Bureau of Prison's Director the discretion to provide sentence reductions to nonviolent inmates who complete RDAP and meet other specified criteria. See 28 C.F.R. 550.58. I understand the petitioner is requesting a second sentence reduction pursuant to 18 U.S.C. 3621(e)(2)(B).

3. Inmate Alvin Kotz, Register Number 16577-016, is a seventy one year old defendant who previously served a federal sentence and was released via a BOP drug abuse program sentence reduction on June 8, 1999. On November 8, 2005, the inmate was returned to

federal custody and was subsequently convicted of running an illegal gambling business on sporting events, and money laundering. He is now serving a federal sentence of thirty six months followed by 20 months of supervised release. On January 23, 2006, petitioner was informed that he qualified to enroll in the RDAP program but was ineligible for a sentence reduction under 18 U.S.C. § 3621(e) due to a prior 3621(e) release. The petitioner signed the form. Exhibit 2 to Petitioner's Memorandum in Support of a Temporary Restraining Order. Because he already received a 3621 sentence reduction, he is ineligible to receive a second sentence reduction. See also Declaration of Beth Weinman, National Residential Drug Abuse Coordinator.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 10th day of May, 2007.

H. Leon Bryan
Drug Abuse Programs Coordinator
Federal Correctional Institution
Cumberland, Maryland

Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALVIN KOTZ,

        Petitioner,

              v.                Case No.: 07-CV-00856 (RMU)

HARLEY LAPPIN, ET AL.,

        Respondent.

_____

## DECLARATION OF BETH WEINMAN

In accordance with the provisions of Section 1746 of Title 28, United States Code, I, the undersigned, Beth Weinman, do hereby make the following unsworn declaration, under penalty of perjury, pertinent to the above-styled cause:

1. I am currently employed by the United States Government, Federal Bureau of Prisons, as the National Drug Abuse Programs Coordinator at the Central Office in Washington, D.C. I have held this position for approximately 15 years.

2. I am responsible for the administration and development of the Bureau's Residential Drug Abuse Program (RDAP) and am familiar with the applicable statutes, regulations, and policies. These statutes, regulations, and policies afford the Bureau of Prison's Director the discretion to provide sentence reductions to nonviolent inmates who complete RDAP and meet other specified criteria. See 28 C.F.R. 550.58. I understand the petitioner is requesting a second sentence reduction pursuant to 18 U.S.C. 3621(e)(2)(B).

3. Since the implementation of 18 U.S.C. 3621(e)(2)(B), the Bureau has not provided inmates who were previously credited with sentence reductions and are subsequently convicted of additional crimes with subsequent sentence reductions. However, RDAP participation

continues to be available to these inmates.

    4. 18 U.S.C. § 3621 (e) requires the BOP to provide all inmates who volunteer and are diagnosed with a drug use disorder RDAP before their release from BOP custody. The early release is an incentive for inmates to volunteer for the program, but not a method to continue to receive early release. Therefore, the Director of the Bureau of Prisons has exercised the discretion vested in him by Congress by not allowing for more than one early release per inmate for the completion of the RDAP. The BOP has therefore issued Program Statement 5331.01, Early Release Procedures under § 3621(e), at 3 (October 3, 2003), which states that "[inmates may earn an early release for successful RDAP completion only once."

    I declare under penalty of perjury that the foregoing is true and correct. Executed on this ___ day of May, 2007.

Beth Weinman
National Drug Abuse Programs Coordinator
Federal Bureau of Prisons
Washington, D.C.

Exhibit D

 U.S. Department of Justice
Federal Bureau of Prisons

"CORRECTED COPY 10/3/2003"

# Program Statement

**OPI:** CPD
**NUMBER:** 5331.01
**DATE:** 9/29/2003
**SUBJECT:** Early Release
Procedures Under
18 U.S.C. § 3621(e)

1. **PURPOSE AND SCOPE.** To establish criteria and procedures when considering an inmate for early release.

As an incentive for inmates to participate in residential drug abuse programs, non-violent inmates may be considered for early release in accordance with the provisions of 18 U.S.C. § 3621(e).

2. **PROGRAM OBJECTIVES.** The expected results of this program are:

   a. For purposes addressed in this Program Statement, early release will be available for eligible inmates.

   b. Staff will ensure that only eligible inmates will be released early from Bureau custody.

   c. The public will be protected from undue risk by following all early release procedures.

   d. All early releases will be reviewed properly and errors will be processed appropriately.

3. **DIRECTIVES REFERENCED**

| | |
|---|---|
| PS 5162.02 | Definition of Term, Crime of Violence (7/24/95) |
| PS 5162.04 | Categorization of Offenses (10/9/97) |
| PS 5270.07 | Inmate Discipline and Special Housing Units (12/29/87) |
| PS 5310.12 | Psychology Services Manual (8/13/93) |
| PS 7430.02 | Community Transitional Drug Abuse Treatment For Inmates (4/14/99) |

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

4.  **STANDARDS REFERENCED**

a.  American Correctional Association 3rd Edition Standards for Adult Correctional Institutions:  3-4388-4

b.  American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities:  3-ALDF-4F-09

c.  American Correctional Association 2nd Edition Standards for Administration of Correctional Agencies:  None

5.  **EARLY RELEASE CRITERIA.**  In this section, we briefly describe the criteria that an inmate must meet to be eligible for early release.  For details on the early release criteria, see the administrative regulations **[in brackets and bold]** in Attachment A.

Throughout this PS, we use the terms **"eligible"** and **"ineligible"** for early release.  However, we note here that eligibility or ineligibility is provisional and may change (e.g., detainers may be dropped or lodged, administrative corrections may be made [e.g., early release assignment was incorrectly entered], CCC placement decisions reversed).

a.  **Eligibility Criteria for Early Release.**  Inmates must meet the following eligibility criteria to earn an early release:

- ■  **"New law" Inmate.**  An inmate must be sentenced under the Sentencing Reform Act (SRA).  Ordinarily, these inmates have been sentenced for an offense that occurred on or after November 1, 1987.

- ■  **Non-violent Offense.**  An inmate must be sentenced for a non-violent offense.  Rather than define "non-violent offenses," the Bureau defines offenses that are violent or exclude an inmate from early release.  See the Program Statement on Categorization of Offenses for additional information.

- ■  **Substance Abuse Problem.**  The federal statute on early release requires that the inmate have a substance abuse problem.  The statute also allows the Bureau to define a substance abuse problem.  Specific criteria are contained in the drug programs chapter of the Psychology Services Manual.

PS 5331.01
9/29/2003
Page 3

■ **Residential Drug Abuse Program Completion.** To earn early release, an inmate must complete all required components of the residential drug abuse program (RDAP) successfully. RDAP completion is defined in the Psychology Services Manual.

b. **Early Release Special Circumstances**

■ **Physically and Medically Disabled Inmates.** Inmates with physical or medical conditions who reside on a non-RDAP unit may be considered for early release. They must meet two conditions. First, they must meet all the admission criteria for the RDAP. Second, they must participate in all of the RDAP program components, including community-based treatment.

■ **Inmates with Detainers.** Inmates with detainers who were in the RDAP on or before August 17, 1995, and who have completed follow-up treatment services in the institution, may receive the early release incentive.

c. **Inmates Ineligible for Early Release.** The Bureau has determined that the following categories of inmates **are not eligible for early release**:

■ **INS Detainees and Pretrial Inmates.** These inmates may be held in Bureau custody, but they are **not serving a federal sentence under the "new law."**

■ **Contract Boarders** (e.g., state or military inmates). This also includes inmates sentenced under provisions other than 18 U.S.C. Chapter 227.

■ **Prior Violent Convictions.** Inmates whose offense history contains a felony or misdemeanor conviction for homicide, forcible rape, robbery, aggravated assault, or child sexual abuse offenses.

■ **Prior Early Release Granted.** Inmates may earn an early release for successful RDAP completion only once. Inmates returning on supervised release violations and/or inmates who are sentenced for new offenses are not eligible for early release if they received it previously.

■   **Current Conviction for Violence or Excluding Crime.**
Offenses that are violent or those considered an
excluding crime are contained in the Program Statement
on Categorization of Offenses.

■   **Parole Eligible Inmates.**  Parole eligible inmates are
not eligible for early release.  These inmates may, at
the U.S. Parole Commission's (USPC) discretion, be
eligible for an advanced release date through an award
of Superior Program Achievement (SPA).  When an inmate
completes the RDAP, the Drug Abuse Program (DAP)
Coordinator is to send the Treatment Summary to the
unit team promptly.

■   **District of Columbia Inmates.**  Inmates sentenced under
provisions other than 18 U.S.C. Chapter 227 (e.g., D.C.
inmates).

6.  **EARLY RELEASE PROCEDURES.**  DAP Coordinators play a key role
in identifying, monitoring, and documenting an inmate's
eligibility for early release.  The process involves several
steps, and are summarily provided in the 3621(e) Procedural
Checklist (BP-S769.055).

   a.  **Residential Drug Abuse Program (RDAP) Notice To Inmate.**
Before an inmate enters RDAP, he or she must be informed of his
or her early release status using the **Residential Drug Abuse
Program Notice to Inmate** form (BP-S761.055).  This form contains
the early release eligibility criteria.  Before this form is
completed, communication between the DAP Coordinator and the unit
team is required.  In some cases, legal review is also necessary.

   Once the entire **RDAP Notice to Inmate** form has been completed,
it must be provided to the inmate and entered into the Psychology
Data System (PDS).  DAP staff will enter the appropriate SENTRY
early release eligibility assignment and, at the same time, enter
the DAP WAIT assignment.

   b.  **Request for Unit Team Determination.**  The DAP Coordinator
must ensure that the **Request for Unit Team Determination** form
(BP-S762.055) is sent to the unit team.  This form is used to
determine if the instant offense allows, or excludes, an inmate
from early release.

   The Program Statement on Categorization of Offenses applies to
all inmates who began RDAP participation on or after October 9,
1997.  All other cases are reviewed based on the Program
Statement on Definition of Term, Crime of Violence.

PS 5331.01
9/29/2003
Page 5

c.  **Request for Legal Review.**  The DAP Coordinator reviews prior criminal convictions to see if there are any previous convictions that exclude the inmate from early release, and documents this on the RDAP Notice to Inmate Form.  When necessary, the DAP Coordinator must send the **Request for Legal Review** form (BP-S763.055) to the Consolidated Legal Center for guidance.

d.  **Notice to Inmate Systems Management (ISM) of 3621(e) Release Date.**  When the early release criteria have been met, and the inmate is placed in the RDAP, the DAP Coordinator must notify ISM.  The **Notice to ISM of 3621(e) Date** form (BP-S764.055) requests that ISM staff change the inmate's Good Conduct Time Release Date to a 3621(e) date.

e.  **Early Release Review.**  DAP Coordinators oversee the completion of the **Early Release Review** form (BP-S765.055).  The DAP Coordinator must send this form to the Regional DAP Coordinator at least 90 days, but not more than 120 days, before the inmate's anticipated transfer date to a community-based program.  Specifically:

(1)  the **Warden (or designee)** must:

- complete all items on the Early Release Review form;
- print and sign the Early Release Review form before routing;
- send the Early Release Review form via BOPNet GroupWise to the Regional Director, or designee, for review;
- file the original signed and dated copy of the Early Release Review form in the inmate's DAP file; and
- file the Central Office response:

  - on the left side of the Judgment in a Criminal Case (J&C) file on top of the J&C Order;
  - in section 1 of the Inmate Central File on top of the J&C Order; and
  - in the DAP file along with other drug program information.

(2)  the **Regional Director (or designee)** must:

PS 5331.01
9/29/2003
Page 6

- review the SENTRY Security Designation and Custody Classification screens to determine if information contained within has been adequately explained in the institution comments section. In some cases, further regional legal review may be requested.
- print his or her name and the date of review on the Early Release Review form;
- add comments (see instructions in BP-S765.055); and
- send the Early Release Review form via BOPNet GroupWise to the Assistant Director, Correctional Programs Division, or designee.

The Regional DAP Coordinator must send the Early Release Review form via BOPNet GroupWise to the Central Office-DAP Coordinator mailbox at least 60 calendar days before the inmate's anticipated transfer date to the Community Corrections Center (CCC).

(3) the **Assistant Director of the Correctional Programs Division or designee** must:

- review all Early Release Review forms forwarded to them by the Regional Office under § 3621(e) and

- send a letter via BOPNet GroupWise to the Warden, ISM, the respective Unit Team, Regional DAPC, and the institution DAPC to confirm or deny an inmate's eligibility for early release. Denial letters will include a rationale.

**If there is a change in the inmate's status that affects his or her eligibility for early release after the institution receives the Central Office letter,** the institution DAP Coordinator must report these changes to the Regional DAP Coordinator promptly. It is the Regional DAP Coordinator's responsibility to notify the Central Office via BOPNet GroupWise promptly.

If necessary, the Central Office will then send an approval or denial letter to the Warden, ISM, Unit Team, and the DAP Coordinator rescinding the previous letter.

f. **Unit Team Final Review.** After the Central Office approval letter has been sent to institution staff, there is still an additional review procedure to complete. The Unit Manager (or designee) must ensure completion of a **Unit Team Final Review** form

PS 5331.01
9/29/2003
Page 7

(BP-S766.055) before transfer to a community-based program or detainer (ordinarily within 30 days from CCC transfer or release). This form ensures that all criteria for early release have been met.

- **The DAP Coordinator** completes items 1, 2, and 3 of the Unit Team Final Review form.

- **The Unit Team** completes all other items and then routes the form to the Warden. Ordinarily, it should be routed along with other final release paperwork (furlough transfer form, release and gratuity form, etc.).

Once signed and dated, a copy must be filed in the disclosable portion of Section 5 in the Inmate Central File. The original must be forwarded to the ISM, with a copy provided to the DAPC.

- **The ISM** will file the original in the J&C file.

**No inmate may be released from custody or transferred to a community-based program under 18 U.S.C. § 3621(e) until the ISM receives the Unit Team Final Review form with all appropriate signatures and the Central Office approval memorandum.**

7. **CHANGES IN EARLY RELEASE ELIGIBILITY.** An inmate may lose his or her early release eligibility at any time as a result of:

- a failure to complete **all** RDAP components (including follow up services and transitional drug abuse treatment);
- identification of a previous error; or
- committing certain prohibited acts.

The Drug Abuse Programs chapter of the Psychology Services Manual contains specific information on the circumstances that may lead to expulsion and loss of early release.

a. **When an inmate is participating in a RDAP,** the DAP Coordinator monitors the status of early release eligibility. If there are changes in the inmate's early release status, the DAP Coordinator will complete and route the **Change in Drug Abuse Status Memorandum** (BP-S767.055) to the Unit Team. At this time, DRG SENTRY assignments must be changed.

b.  **When an inmate completes the RDAP,** the Unit Team monitors the inmate's early release eligibility status.  If there are changes in the inmate's early release status, the unit team must notify ISM and the DAP Coordinator with the **Change in Drug Abuse Status** form.

c.  **When an inmate is placed in community-based treatment,** the Transitional Drug Abuse Treatment Coordinator (T-DATC) monitors the inmate's treatment.  The T-DATC must make a recommendation to the Community Corrections Regional Administrator (CCRA) to have the inmate's early release delayed or removed.

The T-DATC must complete the Change in Drug Abuse Program Status form (BP-S767.055) when appropriate (e.g., returned to secure custody).

8.  **DELAYING EARLY RELEASE.**  If the inmate cannot fulfill his or her community-based treatment obligations by the presumptive release date, the CCRA may adjust the presumptive release date by the minimum amount of time necessary to allow the inmate to fulfill his or her treatment obligations.

If the CCRA determines that a § 3621(e) release date should be delayed, the Community Corrections Manager (CCM) must establish a new SENTRY early release date.  The CCM must monitor this new § 3621(e) release date closely for release purposes.

a.  **Reducing the Early Release Benefit.**  To delay early release in a community-based program, the T-DATC must make a recommendation to the CCRA.

Examples of circumstances when a CCRA may delay early release:

(1)  the inmate cannot fulfill his or her transitional drug abuse treatment obligations by the presumptive § 3621(e) release date or,

(2)  the additional time in transitional drug abuse treatment will increase the likelihood that the inmate will refrain from drug use and criminality.

Additional guidance on delaying early release is contained in the Program Statement on Community Transitional Drug Abuse Treatment.  The T-DATC must use the Request for Delay of Provisional 3621(e) Date form (BP-S768.055) to delay an inmate's early release.

PS 5331.01
9/29/2003
Page 9

   b.  **Removing Early Release Benefit.**  If an inmate fails a
community-based placement, the T-DATC must ensure that the
inmate's SENTRY assignment is changed to RDAP failure, and the
CCM must ensure that the inmate's early release date is removed
immediately.  At no time should an inmate have a SENTRY
assignment of RDAP failure and maintain an early release date.




                              **/s/**
                              Harley G. Lappin
                              Director

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ALVIN KOTZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-0856 (RMU)** |
| | ) | |
| **HARLEY G. LAPPIN, DIRECTOR,** | ) | |
| **FEDERAL BUREAU OF PRISONS** | ) | |
| **and** | ) | |
| **FEDERAL BUREAU OF PRISONS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## <u>ORDER</u>

Upon consideration of Defendants' Motion to Dismiss, Plaintiff's Opposition thereto, and

the entire record herein, it is this _____ day of _____, 2007,

ORDERED that Defendants' Motion to Dismiss be and hereby is granted; and it is

FURTHER ORDERED that this action is dismissed.


_____
UNITED STATES DISTRICT JUDGE

Copies of this order to:

Brian W. Shaughnessy
913 M Street, N.W.,
Suite 101
Washington, D.C.  20001

Wyneva Johnson
Assistant United States Attorney
United States Attorney's Office
 for the District of Columbia
555 Fourth Street, N.W., Rm. E-4106
Washington, D.C.  20530

Jonathan C. Brumer
Special Assistant United States Attorney
United States Attorney's Office
 for the District of Columbia
555 Fourth Street, N.W., Room E-4815
Washington, D.C. 20530