## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALVIN KOTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0856 (RMU) |
| | ) | |
| HARLEY G. LAPPIN, DIRECTOR, | ) | |
| FEDERAL BUREAU OF PRISONS | ) | |
| and | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

Defendants, the Federal Bureau of Prisons ("BOP") and Harley Lappin, Director, BOP, respectfully file this reply in support of their motion to dismiss this action. Plaintiff, a Federal prisoner housed in Cumberland, Maryland, is before this Court challenging the BOP's determination that he is ineligible for a second sentence reduction under 18 U.S.C. § 3621(e). This statutory provision gives the BOP broad discretionary authority to award sentence reductions to nonviolent inmates who successfully complete a Residential Drug Abuse Program ("RDAP") and meet other specified criteria.

On May 8, 2007, Plaintiff initiated this action by filing a Complaint, along with a Motion for a Temporary Restraining Order ("TRO"), and a Motion for a Preliminary Injunction ("PI"). On May 15, 2007, the undersigned counsel filed a Memorandum in Support of Defendant's Motion to Dismiss, and in Opposition to Plaintiff's Motions for a Temporary Restraining Order and a Preliminary Injunction ("Defs.' MTD/Opp." or "Defendants' Motion to Dismiss"). In that

brief, Defendants adverted to the well established rule that habeas corpus is the exclusive remedy for any prisoner who (like Plaintiff) seeks to gain earlier release or even to improve his chances of earlier release.  See Defs.' MTD/Opp. at 13-20.  As Defendants explained, under that rule such an inmate must proceed by way of a writ of habeas corpus, in an action which names his custodian (i.e., his warden), and the action must be filed in a jurisdiction in which personal jurisdiction can be exercised over the warden.  Id.  Because Plaintiff's action runs afoul of every element of this rule, Defendants explained that this Court lacks jurisdiction, venue is improper, and Plaintiff's reliance upon various jurisdictional bases other than habeas corpus is improper. Id.  As Defendants further noted, this Court lacks jurisdiction over Plaintiff's action because Plaintiff has failed to comply with the administrative exhaustion requirements which are set forth in the BOP's duly promulgated regulations, and so has failed to comply with non waivable jurisdictional requirements under the Prison Litigation Reform Act ("PLRA").  See id. at 20-25. In addition, Defendants stated that this action should be dismissed for failure to state a claim because: (1) the BOP's decision was reasonable and consistent with 18 U.S.C. § 3621(e), the implementing regulations, and the BOP's longstanding policy; (2) Plaintiff's contention that the BOP's policy guidance violated the notice and comment requirements of the Administrative Procedure Act ("APA") is unavailing; and (3) Plaintiff has failed to establish the either his due process or equal protection rights have been violated.  See id. at 25-31.

On May 19, 2007, Plaintiff filed an Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp." or "Opposition").  In his Opposition brief, Plaintiff argues first that the Court has jurisdiction over this action under 18 U.S.C. § 3626(g).  See Pl.'s Opp. at 2-6.  Second, Plaintiff briefly reiterates  his contention that Program Statement 5331.01 is a legislative rule, subject to

the APA's rulemaking requirements, and his claim that it was arbitrary and capricious.  Id. at 6-7.

Finally, Plaintiff argues that "[e]ven if he did not exhaust his remedies, the Court should exercise

its discretion to excuse exhaustion on grounds of futility."  Id. at 7-8.  For the reasons set forth

below, this Court should reject each of Plaintiff's latest arguments.

## ARGUMENT

**I.    Plaintiff's Action Must Proceed in Habeas Corpus, Notwithstanding the Fact that Plaintiff has Invoked the APA, and Even if the Action is Characterized as a Challenge to the Issuance of Policy or Program Statement**

As Defendants noted in their Motion to Dismiss, Plaintiff is clearly contesting the length

of his confinement.  See, e.g., Def.'s MTD/Opp. at 14 & n. 3; Complaint at 4, ¶ 20; id. at 5

(generally); 5, ¶¶ 24-25; Pl.'s Mot. for TRO at 5, 10; Pl.'s Mot. for PI.  It is uncontroverted that

Plaintiff has been allowed to participate in the RDAP program a second time, and that is not at

issue in this action.  See, e.g., Defs.' MTD/Opp. at 14-15 (citing Complaint at 3, ¶ 13; Mot. for

TRO at 2, ¶ 5 (same); Mot. for TRO at 8; Declaration of Paul C. Kurtz at 6, ¶ 6).  All that is at

issue here is whether Plaintiff will be eligible for a second sentence reduction as a result of his

participation in the program for a second time, and whether the Program Statement barring him

from consideration for such a second sentence reduction is lawful, matters with a clear bearing

on legality and the duration of his sentence.

As Defendants explained, because Plaintiff "seeks injunctive relief challenging the . . .

duration of his sentence" and inasmuch as a judicial victory for Plaintiff would have at the very

least "a probabilistic impact on the duration of his custody," Plaintiff's "claims fall within the

'core' of habeas corpus" and his action can only proceed as a habeas corpus proceeding, brought

in the federal district of incarceration, which names his Warden as a Defendant.[1]  As Defendants

have noted, Plaintiff has failed to comply with every aspect of this rule.  First, Plaintiff's

complaint sounds in habeas corpus, and cannot proceed as a civil complaint.  Second, Plaintiff is

held in Maryland, not the District of Columbia.  See, e.g., Defs.' MTD/Opp. at 16 (citing

Complaint at 1, ¶ 1;Complaint at 3, ¶ 12; Pl.'s Mot. For TRO at 2, ¶ 4; Declaration of Paul C.

Kurtz at 2-3, ¶¶ 5-8 ; Ex. A, Declaration of Bruce Plumley, ¶¶ 4-5 (May 10, 2007); Ex. B,

Declaration of H. Leon Bryan, ¶ 3).  Thus, venue in this jurisdiction is not proper.  Id.  Nor has

Plaintiff named his Warden as a defendant as required.  And this Court could not exercise

jurisdiction over the Warden even if the Warden was named as a Defendant.  Id.  For these

reasons, among others, Defendants explained that Plaintiff's action should be dismissed.  See id.

(citing Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3)).

        In his Opposition to Defendants' Motion to Dismiss, Plaintiff for the first time

acknowledges that a "[h]abeas [corpus proceeding] brought in the district where the inmate is

incarcerated is proper when the issue [in an action] is one involving the fact or duration of

physical incarceration."  See Pl.'s Opp. at 2.  However, to avoid the effect of the rule Plaintiff

now acknowledges exists, he argues that he is not really challenging the fact or duration of his

---

[1]  See, e.g., Defs.' MTD/Opp. at 13-19 (citing, among other decisions, Wilkinson v. Dotson, 544 U.S. 74, 82 (2005); Nelson v. Campbell, 541 U.S. 637, 643 (2004); Rumsfeld v. Padilla, 542 U.S. 426, 447 (2004); Stokes v. U.S. Parole Comm'n, 374 F.3d 1235, 1237-38 (D.C. Cir. 2004); Bourke v. Hawk-Sawyer, 269 F.3d 1072, 1074 (D.C. Cir. 2001) ("Bourke"); Razzoli v. Federal Bureau of Prisons, 230 F.3d 371, 373 (D.C. Cir. 2000) ("Razzoli"); Blair-Bey v. Quick, 151 F.3d 1036, 1039 (D.C. Cir. 1998); LoBue v. Christopher, 82 F.3d 1081, 1082-84 (D.C. Cir. 1996); Chatman-Bey v. Thornburgh, 864 F.2d 804, 809 (D.C. Cir. 1988) (en banc); Guerra v. Meese, 786 F.2d 414 (D.C. Cir. 1986) In re Tripati, 836 F.2d 1406, 1407 (D.C. Cir. 1988); ; see also Dominguez v. BOP, 2006 W.L. 1445041, *3 (D.D.C. 2006); McGlamary v. Lappin, 2006 W.L. 1382185, *1, n.1 (D.D.C. 2006); Boyer v. Conaboy, 983 F. Supp. 4 (D.D.C. 1997); Bayless v. United States Parole Commission, 1996 W.L. 525325, *7 (D.D.C. 1996)).

incarceration.  Rather, he argues that "[h]ere the issue is whether a BOP Central Office
(Washington, D.C.) Ruling has deprived the inmate of consideration for a program benefit in
violation of established rule-making procedures."  Id.  Specifically, Plaintiff argues that he seeks
to challenge the adoption of Program Statement 5331.01, which he claims deprived him of an
opportunity to be considered for a sentence reduction, and which he alleges was improperly
promulgated in violation of the APA's Notice and Comment requirements.  See Pl.'s Opp. at 2-5.
Plaintiff states that he "challenges the adoption of the Program Statement 5331.01; that is, he
seeks to show that the rulemaking process was defective and he should have been treated under
the previous Program Statement, which made him eligible for a sentence reduction" and that, as
such, his action is not a challenge to the duration or fact of confinement which needs to proceed
through habeas corpus.  See id. at 3.  Plaintiff's effort to avoid the effect of the rule he now
acknowledges exists is unsuccessful.

  If Plaintiff were able to persuade this or another Court were to rule that Program
Statement 5331.01 was unlawfully adopted and that he was entitled to an opportunity to be
considered for a second sentence reduction, this decision would improve (however slightly)
Plaintiff's chances of obtaining such a reduction.[2]  Thus, even if Plaintiff's action is cast solely as
an APA challenge to the process through which Program Statement 5331.01 was adopted,
Plaintiff cannot escape the fact that a favorable court decision on those issues would have, at the

---

[2]  A recognition that this is so is presumably what motivated Plaintiff to bring his suit in
the first place.  Indeed, Plaintiff must establish that he has a lower chance of obtaining a second
sentence reduction under the status quo than he would if he were to prevail in court: if he is to
(1) demonstrate that he has sustained the sort of concrete injury necessary to confer standing, and
(2) show that he suffered the sort of irreparable injury necessary to justify a PI and/or a TRO.
See Defs.' MTD/Opp. at 18-19 (making the first point, about standing).

very least, a "probabilistic impact on the duration of custody" and call into question the legality

of the duration of his incarceration and the legality of the BOP's policy denying consideration for

a second sentence reduction.  As such, Plaintiff's action must take the form of a habeas corpus

proceeding.  See, e.g., Forrester v. U.S. Parole Commission, 310 F.Supp.2d 162, 168 (D.D.C.

2004) (noting that "Plaintiff posits that he is not seeking 'to challenge the fact or duration of his

imprisonment[,]' and therefore, he may properly maintain this non-habeas action"); id. at 169-70

(finding, nevertheless, that "[i]n this case, as in Razzoli and Bourke, plaintiff's challenge to the

standard relied on by the Parole Commission, and his assertion that a more lenient standard be

utilized, would have a 'probabilistic impact' on the duration of his custody because he argues

that the Commission's reliance on the more stringent federal standard prejudiced his chances for

parole" and concluding that "reaching the merits of plaintiff's APA claim and his Privacy Act

claim would have a probabilistic impact on his confinement pursuant to Razzoli, and therefore

plaintiff may only raise these claims in a petition for a writ of habeas corpus") (emphasis added);

see also LoBue, 82 F.3d at 1082-84; Razzoli, 230 F.3d at 373; Bourke, 269 F.3d at 1074;

Chatman-Bey, 864 F.2d at 809; id. at 807 (noting that "the Supreme Court has expressly

sanctioned the invocation of habeas where the injury in question is, among other things, a

prejudicing of one's right to be considered for parole.")

Plaintiff seeks to distinguish and limit the scope of Bourke, Razzoli, and their progeny by

arguing that "[t]hese cases are inapplicable since they treat only specific adjudications of the

agency, not the general principle– the rulemaking process – raised by plaintiff."  See Pl.'s Opp. at

3-4.  In fact, these cases are devoid of any language limiting the scope of the rule they announced

to challenges to adjudications or as-applied challenges, as distinguished from facial challenges.

Furthermore, a review of the District Court opinion in <u>Bourke</u> makes plain that the case arose in a procedural context that was analogous both factually and legally to this one.  The plaintiff in <u>Bourke</u> challenged a BOP Program Statement that excluded him from eligibility for a sentence reduction under 18 U.S.C. § 3621(e), the very statutory provision implicated here, because he was convicted of possession of a machine gun.  <u>See</u> <u>Bourke v. Hawk</u>, 121 F. Supp. 2d 9, 10 (D.D.C. 2000), <u>rev'd in</u> 269 F.3d 1072, 1074 (D.C. Cir. 2001).  He brought a facial (not just an as-applied) challenge to the reasonableness of that Program Statement and its consistency with the APA.  <u>See</u> <u>Bourke</u>, 121 F. Supp. 2d at 12-13 (noting that plaintiff had "challenge[d]" the BOP's "regulations under the Administrative Procedures Act" and indicating that "plaintiff's exclusive challenge here is to the Bureau of Prisons' interpretation of the term 'nonviolent offense' in 18 U.S.C. § 3621(e)(2)(B) and not to its authority to keep him in custody for the full period of his sentence . . . ").  Despite the fact that <u>Bourke</u> involved a facial challenge to a BOP Program Statement, the D.C. Circuit had no trouble finding that the plaintiff there needed to proceed through a habeas corpus petition.  <u>See</u> <u>Bourke</u>, 269 F.3d at 1074 (observing that "[i]f Bourke is to pursue his claim he must seek a writ of habeas corpus" because, "[a]s in <u>Razzoli</u> and <u>Chatman-Bey</u>, the crux of the appellant's claim is that he was illegally denied the 'chance to secure his release'" and since "[a]lthough Bourke's success on this claim would not necessarily result in his being released any earlier, it would raise that possibility and thus have a 'probabilistic impact' upon the duration of his custody.")

In other cases involving facial challenges to agency rules, this Court has reiterated and applied the rule that where a prisoner challenges the very fact or duration of his physical confinement, his sole federal remedy is a writ of habeas corpus.  <u>See, e.g.</u>, <u>Boyer v. Conaboy</u>,

983 F. Supp. 4, *6 (D.D.C. 1997) (finding, in the context of a prisoner who contested the United States Sentencing Commission's authority to promulgate guidelines that render conspiracy a predicate offense for the career-offender enhancement, that "notwithstanding Plaintiff's novel and creative litigation strategy, his action sounds exclusively in habeas corpus" and that "[t]he Court will reaffirm a principle that has unwaveringly governed federal-court practice for almost a quarter-century: that a prisoner who attacks the legality or duration of his sentence must proceed by habeas corpus"); Forrester, 310 F.Supp.2d at 168.

Plaintiff cites two District Court decisions, Lyle v. Sivley, 805 F. Supp. 755 (D. Ariz. 1992) ("Lyle") and Wiggins v. Wise, 951 F. Supp. 614 (S.D. W. Va. 1996) ("Wiggins"), as authority for his contentions that his challenge to Program Statement 5331.01 need not proceed as a habeas corpus petition, and that "this Court has jurisdiction and venue." See Pl.'s Opp. at 3-4. Of course, because these two decisions were rendered outside of this Circuit, they are not binding authority on this Court, and at best constitute persuasive authority.

In any event, neither decision stands for the principles for which they are cited by Plaintiff, and both are easily distinguishable legally and factually. Unlike the Plaintiff here, the plaintiff-prisoner in Lyle actually filed a petition for a writ of habeas corpus, naming his warden, Joseph L. Sivley, in a district court with jurisdiction over his warden. See Lyle, 805 F. Supp. at 756. Moreover, the plaintiff in Lyle did not contest the fact or duration of his confinement or any decision that had any prospect of affecting the fact or duration of his incarceration. Rather, he merely argued that he had "illegally been denied placement in a Community Corrections Center (more commonly known as a 'halfway house')" during the last sixty days of his sentence. See id. at 756. The duration or fact of his incarceration was never actually or even potentially at issue in

8

that case.  Thus, <u>Lyle</u> has no possible relevance to the questions of whether Plaintiff here must proceed by habeas corpus and whether this Court has jurisdiction and venue over Plaintiff's challenge to the duration of his sentence.

The <u>Wiggins</u> case is only slightly more relevant to this case, inasmuch as the plaintiff there was an inmate who was challenging a BOP policy which denied her eligibility for early release under a RDAP provided for by 18 U.S.C. § 3621(e)(2), and thus was challenging the duration of her confinement.  <u>See Wiggins</u>, 951 F. Supp. at 616.  However, the plaintiff in that case, unlike the Plaintiff here, filed a petition for a writ of habeas corpus, naming her warden, in a district court with jurisdiction over her warden.  <u>See Wiggins</u>, 951 F. Supp. at 616.  Thus, the issue of whether a challenge concerning (or which might impact) the fact or duration of incarceration could be brought as a civil action in the wrong jurisdiction never arose in <u>Wiggins</u>.

The court in <u>Wiggins</u> concerned itself in large part with the issue of whether judicial review of the early release denial under the APA was precluded by 18 U.S.C. § 3625, <u>see Wiggins</u>, 951 F. Supp. at 618-19; a separate and secondary issue which this Court can resolve by considering more relevant precedent from within this Circuit.  <u>See</u> , <u>e.g.</u>, Defs.' MTD/Opp. at 17-18; <u>Enigwe v. Bureau of Prisons</u>, 2006 WL 3791379 (D.D.C. 2006), *2 (finding that "the Court is precluded by statute," 18 U.S.C. § 3625, "from reviewing its classification decision under the APA" and explaining that "[i]n the absence of a claim of constitutional violation, abuse of discretion, agency action contrary to law, or agency action exceeding the scope of its authority, the Court is precluded by statute from reviewing BOP's classification decision"); <u>Tanner v. BOP</u>, 433 F. Supp.2d 117, 122, n. 5 (D.D.C. 2006) (noting that "the APA is inapplicable to matters of imprisonment"); <u>see also</u> <u>Council of Prison Locals v. Howlett</u>, 562 F. Supp. 849, 851, n. 4

9

(D.D.C. 1983) (finding that "[i]t is by now well settled that neither the Administrative Procedure Act nor the Declaratory Judgment Act . . . independently afford federal jurisdiction") (internal citations omitted).  In any event, even if this Court were to conclude that 18 U.S.C. § 3625 does not preclude jurisdiction under the APA for certain types of challenges to the lawfulness of BOP policies and Program Statements, the fact remains that Plaintiff has run afoul of the rule requiring that challenges to the fact or duration of imprisonment must proceed through habeas corpus, not a civil action, brought in a Court with jurisdiction over the warden, which names the Warden as Defendant.  Thus, the Court need not reach the secondary question of whether section 3625 precludes review of a prisoner's APA claims in a habeas corpus proceeding brought in a court with jurisdiction over the warden.

Plaintiff asserts that jurisdiction and venue in this Court are proper because the decision to deny him consideration for second early release was made by agency officials in D.C., allegedly in violation of the APA's rule making procedures.  See Pl.'s Opp. at 2.  Prisoner challenges to the fact or duration of confinement can almost always be recast as a facial challenge to a Program Statement or regulation.  If Plaintiff's flawed theory is accepted by this Court, it will create an exception to the rule that challenges to the duration and fact of incarceration must proceed through habeas corpus that will rapidly swallow the general rule, in a manner inconsistent with precedent in this Circuit.  This Court should reject such an invitation.

## II.    Section 3626(g) Does not give this Court Jurisdiction Over this Action

Plaintiff contends that "[j]urisdiction is conferred on this Court by 18 U.S.C. § 3626(g), which provides, in pertinent part" that the Court may "provide relief for 'the effect of actions by

government officials on the lives of persons confined in prison.'" <u>See</u> Pl.'s Opp. at 2-6.  To

reach the result he seeks, Plaintiff ignores critical limiting language in 18 U.S.C. § 3626.

Section 3626(a) provides, in relevant part, that "[i]n any <u>civil action with respect to prison

conditions,</u> to the extent otherwise authorized by law, the court <u>may</u> enter a temporary restraining

order or an order for preliminary injunctive relief." <u>See</u> 18 U.S.C. §§ 3626(a)(2) (emphasis

added).  Section 3626(g)(2) however instructs that "[t]he term 'civil action with respect to prison

conditions' means any civil proceeding arising under Federal law with respect to the conditions

of confinement or the effects of actions by government officials on the lives of persons confined

in prison, but <u>does not include habeas corpus proceedings challenging the fact or duration of

confinement in prison</u>." <u>See</u> 18 U.S.C. § 3626(g)(2) (emphasis added).  Thus, Congress has

explicitly excluded "habeas corpus proceedings challenging the fact or duration of confinement

in prison" from the sorts of "civil action[s] with respect to prison conditions" to which a court

may enter a temporary restraining order or an order for preliminary injunctive relief, and

therefore may be assumed to have jurisdiction.  <u>See</u> <u>id</u>.

This action cannot reasonably be characterized as a "civil action with respect to prison

conditions" or as one which challenges the "conditions of confinement" for purposes of sections

3626(a) and 3626(g)(2).  The Courts have found that complaints about "conditions of

confinement" for purposes of these provisions include "complaints such as those regarding cell

overcrowding, poor prison construction, inadequate medical facilities, and incomplete law

libraries," that more generally, "actions arising under this clause relate to the environment in

which prisoners live, the physical conditions of that environment, and the nature of the services

provided therein." <u>See</u>, <u>e.g.</u>, <u>Almahdi v. Ridge</u>, 2006 WL 3051791, **2 (3rd Cir. 2006) (citing

Booth v. Churner, 206 F.3d 289, 295 (3d Cir.2000), aff'd 532 U.S. 731 (2001)).  The Courts have

read the phrase referring to civil actions about "the effects of actions by government officials on

the lives of persons confined in prison" to mean complaints "ranging from excessive force

actions . . . to actions 'with respect to' a prison official's decision not to make basic repairs in the

prison, or intentionally to deny a prisoner food, heating, or medical attention."  See, e.g.,

Almahdi, 2006 WL at **2 (citing Booth, 206 F.3d at 295).  For instance, a claim by an inmate of

an assault by a prison guard would fall into this second clause, as the inmate would be "affected

by an action, allegedly an assault, by government officials."  See Smith v. Zachary, 255 F.3d 446,

449 (7th Cir. 2001).  Plaintiff's action, by contrast, does not complain about any assault, a lack of

food, or medical care, legal mail, or religious accommodations.

Instead, Plaintiff's action clearly is aimed at "challenging the . . . duration of [his]

confinement in prison" for purposes of section 3626(g)(2), namely the fact that he did not receive

a second one year sentence reduction under 18 U.S.C. § 3621.  See, e.g., Def.'s MTD/Opp. at 14

& n. 3 (citing Complaint at 4, ¶ 20; id. at 5 (generally); 5, ¶¶ 24-25; see also Pl.'s Mot. for TRO

at 5, 10; Pl.'s Motion for Preliminary Injunction.)  Plaintiff's only conceivable objection to the

notion that this action is not encompassed by the "does not include . . . duration" clause of

section 3626(g)(2) is that this action is not a habeas corpus proceeding.  However, as has been

discussed, this action should have been brought as a habeas corpus proceeding.  As has been

mentioned, because Plaintiff "seeks injunctive relief challenging the . . . duration of his

sentence," and since a judicial victory for Plaintiff would have at the very least "a probabilistic

impact on the duration of his custody," Plaintiff's "claims fall within the 'core' of habeas corpus"

and his action can only proceed as a habeas corpus proceeding, brought in the federal district of

incarceration, which names his Warden as a Defendant.  See supra at 3-4 & n. 1.

If Plaintiff had properly brought his challenge to the duration of his confinement as a

habeas corpus proceeding, section 3626(g)(2) would clearly have operated to preclude

jurisdiction over his action as it would unquestionably be a "habeas corpus proceeding[]

challenging the fact or duration of confinement in prison" for purposes of that subsection.  See 18

U.S.C. § 3626(g)(2).  A Congress that explicitly barred jurisdiction under section 3626(g)(2) for

"habeas corpus proceedings challenging the fact or duration of confinement in prison," surely

also intended to bar jurisdiction for actions "challenging the fact or duration of confinement in

prison," which have improperly been brought as civil actions rather than as habeas corpus

proceedings.  It cannot be the case that Plaintiff's failure to bring his action as a habeas corpus

proceeding enables him to now obtain an end run around the restrictive language Congress

enacted in section 3626(g)(2) concerning actions "challenging the fact or duration of confinement

in prison."  Such a strained and mechanistic interpretation of section 3626(g) would have the

effect of expanding jurisdiction over challenges to the fact or duration of confinement in prison

where Congress' intent was clearly to restrict it.  See, e.g., Jones v. Bock, 127 S.Ct. 910, 925

(2007) (observing that the "purpose of the PLRA [was] to reduce the quantity of inmate suits");

Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006) (noting that "[t]he PLRA attempts to eliminate

unwarranted federal-court interference with the administration of prisons," seeks to "'affor[d]

corrections officials time and opportunity to address complaints internally before allowing the

initiation of a federal case,'" and "also was intended to 'reduce the quantity and improve the

quality of prisoner suits.'") (internal citations omitted).  Thus, Plaintiff's action is precisely the

sort of challenge that was within Congress' contemplation when it explicitly excluded "habeas

corpus proceedings challenging the fact or duration of confinement in prison" from the sorts of "civil action[s] with respect to prison conditions" to which a court may enter a temporary restraining order or an order for preliminary injunctive relief.  See 18 U.S.C. § 3626(g)(2).

Plaintiff suggests that Tanner v. Federal Bureau of Prisons 433 F.Supp.2d 117 (D.D.C. 2006) ("Tanner") supports his contention that 18 U.S.C. § 3626(g) confers jurisdiction of the court over the Plaintiff's claims.  See Pl.'s Opp. at 2.  In fact, Tanner does not support, but rather undercuts Plaintiff's argument.  In Tanner, this Court noted that the statute "applies to 'any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.'"  See id. at 121, n. 4 (citing 18 U.S.C. § 3626(g)(2)) (emphasis added).

Thus, Plaintiff's claim that "[b]ecause [18 U.S.C.] § 3626 authorizes a suit against the United States, its sovereign immunity has been waived and the suit may proceed" is false.  See Pl.'s Opp. at 6. While section 3626(g) may well represent a waiver of sovereign immunity, it is a waiver that does not encompass this suit as the waiver "does not include habeas corpus proceedings challenging the fact or duration of confinement in prison."  See 18 U.S.C . § 3626(g)(2); Lane v. Pena, 518 U.S. 187, 192 (1996) (noting that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.")

**III.    Program Statement 5331.01 is an Interpretative Rule, Not Subject to the APA's Notice and Comment Requirements, and Plaintiff has Failed to Establish that it is Arbitrary and Capricious or Contrary to the BOP's Prior Practices**

In their Motion to Dismiss, Defendants explained that, even if the APA applies to this action, Program Statement 5331.01 is a prototypical example of an interpretative rule, which is not subject to the APA's notice and comment requirements. See Defs.' MTD/Opp. at 25-28. Among other things, Defendants noted that in American Mining Congress v. Mine Safety & Health Administration, 995 F. 2d 1106 (D.C. Cir. 1993) ("American Mining Congress"), this Circuit articulated a four part test for determining whether a rule is interpretative or substantive, and that Program Statement 5331.01 satisfies all four prongs of the four part test articulated in that decision. See Defs.' MTD/Opp. at 27-28.

In his latest filing, Plaintiff argues that the Program Statement is a legislative rule because he allegedly satisfies the second and fourth prongs of the American Mining Congress test: "(2) whether the agency has published the rule in the Code of Federal Regulations," and "(4) whether the rule effectively amends a prior legislative rule." See Pl.'s Opp. at 6 (asserting, without any substantiation, that prongs two and four "are both found in the affirmative"); see also American Mining Congress, 995 F. 2d at 1112. Plaintiff is mistaken on both counts.

The second prong of the American Mining Congress test in is not satisfied in this case. Program Statement 5331.01 has not been published in the Code of Federal regulations. See, e.g., Reno v. Koray, 515 U.S. 50, 61 (1995) (observing that a BOP "'Program Statemen[t]'" is "an internal agency guideline," as opposed to "'published regulations subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment,'" and indicating that a "BOP's internal agency guideline" is "akin to an 'interpretive rule' that 'do[es] not require notice

15

and comment'") (internal citations omitted); see also Pelissero v. Thompson, 170 F.3d 442, 447

(4th Cir.1999) (noting that a BOP program statement is "an interpretative statement of position

circulated within [the] agency that serves to provide administrative guidance in applying a then

existing published rule.").

Nor does Program Statement 5331.01 satisfy the fourth prong of American Mining

Congress; it does not "effectively amend[] a prior legislative rule." See Pl.'s Opp. at 6;

American Mining Congress, 995 F. 2d at 1112 (emphasis added). Throughout the pendency of

this litigation, Plaintiff has only pointed to one "legislative rule" which purportedly was

inconsistent with and was effectively amended by Program Statement 5331.01, namely 28 C.F.R.

§ 550.58. See Complaint at 4-5, ¶¶ 21-22; Pl.'s Mot. for TRO at 7-8.[3]  That regulation provides

that an inmate who has been sentenced to a term of imprisonment for a nonviolent offense, who

is determined to have a substance abuse problem, and who successfully completes an RDAP

"may" be eligible for a sentence reduction of up to one year, allowing for the possibility that such

an inmate also may not. See 28 C.F.R. § 550.58. Like the statutory provision on which it is

---

[3]  Plaintiff has also alleged that Program Statement 5331.01 is inconsistent with Program
Statement 5330.10. See Complaint at 4, ¶¶ 18-20; Pl.'s Mot. for TRO at 7; Pl's Opp. at 4.
Because Program Statement 5330.10 is not a "prior legislative rule," but instead is an
interpretative rule however, this claim has no relevance to the fourth prong of American Mining
Congress. See American Mining Congress, 995 F. 2d at 1112. In any event, the allegation is
false. The two Program Statements are consistent with one another. Like the statute and
regulation on which it is based, Program Statement 5330.10 did not state that inmates were
entitled to a second sentence reduction, or even to individualized consideration of eligibility for
such a reduction. It merely stated that "[a]n inmate who completes a residential drug abuse
treatment program during his or her current commitment may be eligible for early release by a
period not to exceed 12 months." See, e.g., Warren v. Crabtree, 185 F.3d 1018, 1020 (9th Cir.
1999) (citing the relevant portion of Program Statement 5330.10) (emphasis added)  Thus, it
allowed for the possibility that an inmate who has already received such a reduction also might
not be eligible for a second such reduction, a possibility which Program Statement 5331.01
confirmed. Plaintiff was not entitled to a second sentence reduction under Statement 5330.10.

based, 18 U.S.C. § 3621(e)(2)(B), 28 C.F.R. § 550.58 gives the BOP unfettered discretionary authority to grant or deny sentence reduction requests, based on either an individualized determination or the application of a categorical rule, as the agency deems appropriate.  See, e.g., Lopez v. Davis, 531 U.S. 230, 241 (2001) (observing that "[w]hen an eligible prisoner successfully completes drug treatment, the Bureau . . . has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment"); id. at 243-44 (rejecting the argument that the BOP "must not make categorical exclusions, but may rely only on case-by-case assessments"); cf. Jasperson v. Federal Bureau of Prisons, 460 F.Supp.2d 76, 90 (D.D.C. 2006) (explaining that "18 U.S.C. § 3621(e)(2)(B) . . . grants unfettered discretion to BOP," and that "[t]he subsection requires nothing."); U.S. v. Coates, 295 F. Supp .2d 11, 22 (D.D.C. 2003) (finding that "[t]he discretion to grant an early release under 18 U.S.C. § 3621(e)(2)(B) lies with the BOP, not with the Court, and the exercise of that discretion is not mandatory even if the BOP finds that the prisoner has met the criteria for early release.")

    Program Statement 5331.01 explains how the BOP will exercise the discretion it has, under both the statute and regulations, in the specific context of an inmate who had already received a sentence reduction under section 3621.  The Statement does no more than to advise the public that the BOP intends to apply a categorical exclusion for inmates who have already earned an early release for successful RDAP completion once before, an action the Supreme Court has found BOP is empowered to take under both its organic statute and the implementing regulations.  See Lopez v. Davis, 531 U.S. 230, 241-44 (2001).  The statute and regulation are silent as to whether inmates who had already benefitted from the early release can benefit a second time and the first program statement does not address that issue.  The BOP has chosen to

fill this gap by issuing Program Statement 5331.01, which explains that inmates who previously benefitted from early release one time, although eligible to participate in the drug treatment program again, cannot benefit from early release a second time.  Under these circumstances, Program Statement 5331.01 cannot reasonably be said to be inconsistent with, or to have amended, the regulation.  The Program Statement simply clarifies and explains how the agency intends to interpret an issue on which the statute and regulations were silent and/or vague: whether an inmate can receive more than one sentence reduction under § 3621 based on the successful completion of an RDAP, and as such is a prototypical interpretative rule.  See National Medical Enterprises, Inc. v. Shalala, 43 F.3d 691, 697 (D.C. Cir. 1995) (noting that "interpretive rules are those that merely clarify or explain existing laws or regulations.").  It is plain that the fourth prong of American Mining Congress is not satisfied here.

Thus, there is ample support for the notion that Program Statement 5331.01, like other BOP Program Statements, is an interpretative rule, not subject to the APA's notice and comment rulemaking requirements.  See, e.g., Reno v. Koray, 515 U.S. 50, 61 (1995); Pelissero v. Thompson, 170 F.3d 442, 447 (4th Cir. 1999); see also Walther v. Bauknecht, 2005 WL 3096491, **4 (11th Cir. 2005) (making the general observation that "a BOP Program Statement is analogous to an interpretative rule, and thus does not require notice and comment.")

Plaintiff also alleges that the Program Statement is arbitrary and capricious because, he claims, it "abruptly and without explanation reversed the consistent practice of at least five years."  See Pl.'s Opp. at 7.  Without any substantiation, Plaintiff represents that for a five year period, the BOP had awarded sentence reductions for the successful completion of an RADP program who had already received such reductions in the past.  Id.  In fact, this has never been

the practice of the BOP.  BOP determined that inmates who previously benefitted from a sentence reduction should not get that benefit a second time, but this policy was not put in writing until the issuance of Program Statement 5331.01.  Contrary to what plaintiff asserts, no inmate has even been a recipient of a second sentence reduction.  See Defs.' MTD/Opp., Ex. C, Declaration of Beth Weinman, ¶¶ 3-4.  It has never been the practice or policy of the BOP to award a sentence reduction to an inmate who has already benefitted from a sentence reduction. See id.  Thus, Plaintiff has failed to show inconsistency or capriciousness in the BOP's practices.


**IV.    There is No Futility Exception to the Exhaustion Requirement under the PLRA**

        In their Motion to Dismiss, Defendants observed that the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  See Defs.' MTD/Opp. at 20 (citing 42 U.S.C. §1997e(a)).  Defendants further noted that in Booth v. Churner, 532 U.S. 731, 740-41 & n. 6 (2001) ("Booth"), a unanimous Supreme Court held that Congress mandated completion of any prison administrative remedy process capable of addressing the inmate's complaint and providing some form of relief, "irrespective of the forms of relief sought and offered through administrative avenues."  See Defs.' MTD/Opp. at 20; see also Jackson v. District of Columbia, 254 F.3d 262, 270-271 (D.C. Cir. 2001); Smith v. Zachary, 255 F.3d 446, 451 (7th Cir. 2001); Yousef v. Reno, 254 F.3d 1214 (10th Cir. 2001).  Defendants also noted that in Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Porter"), the Supreme Court reiterated this requirement stating ". . . exhaustion in cases covered by § 1997e(a) is . . . mandatory. . ." and that in the 2006

19

decision of Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006), the Supreme Court reiterated that in

the PLRA context, "[e]xhaustion is no longer left to the discretion of the district court, but is

mandatory." See Defs.' MTD/Opp. at 20-21.  Thus, Defendants explained that exhaustion under

the PLRA is a non-waivable jurisdictional requirement.  See Defs.' MTD/Opp. at 23-25; 42

U.S.C. §1997e(a); Booth v. Churner, 532 U.S. at 740-41 & n. 6; Porter, 534 U.S. 516 (2002);

Jackson v. District of Columbia, 254 F.3d 262, 270-271 (D.C. Cir. 2001).

   Plaintiff nevertheless contends that "[t]he court may excuse exhaustion on futility

grounds when an adverse decision would be a "certainty," and that exhaustion would be futile in

this case and is not be required.  See Pl.'s Opp. at 7.  In support of this contention, Plaintiff cites

to a series of cases which are easily distinguishable.  Two of them involve entirely different

statutory and regulatory schemes, agencies, and factual and legal contexts, and had nothing

whatsoever to do with the BOP, the Prisoner Litigation Reform Act, prisoners, or sentence

reductions.  First, Plaintiff cites to Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F. 2d

90, 105 (D.C. Cir. 1986), which involved an action brought by blind vendors groups and

interested individuals challenging two proposed government contracts for construction and

operation of fast-food facilities on military bases, and the issue of whether the plaintiffs in that

case had standing and were required to exhaust under the Randolph-Sheppard Act.  See Pl.'s

Opp. at 7.  Second, Plaintiff cites to Communications Workers of America v. American Tel. and

Tel. Co., 40 F.3d 426 (D.C. Cir. 1994), an action brought by a union and two of its members

against employer and pension plan under Employee Retirement Income Security Act ("ERISA").

See id. at 428; Pl.'s Opp. at 7.

   Whereas under the PLRA exhaustion is a mandatory jurisdictional requirement, the Court

20

in <u>Randolph-Sheppard Vendors of Am. v. Weinberger</u>, 795 F. 2d 90 (D.C. Cir. 1986) noted that

under the statute there at issue, the Randolph-Sheppard Act, exhaustion was not a mandatory

jurisdictional requirement, so the court there found that "the issues of joinder and exhaustion as

presented in this action are jurisprudential concerns." <u>See</u> <u>id</u>. at 99, n. 12.  Similarly, the Court in

<u>Communications Workers of America v. American Tel. and Tel. Co.</u>, 40 F.3d 426 (D.C. Cir.

1994), noted that "[b]ecause ERISA itself does not specifically require the exhaustion of

remedies available under pension plans, courts have applied this requirement as a matter of

judicial discretion."  <u>Id</u>. at 432.  Thus, these two decisions in no way support Plaintiff's argument

that he was not required to properly exhaust before he brought this action.

Another decision Plaintiff cites, <u>Colton v. Ashcroft</u>, 299 F. Supp. 2d 681 (E.D. Ky. 2004)

("<u>Colton</u>"), is also readily distinguishable.  <u>See</u> Pl.'s Opp. at 8.  The plaintiff in that action,

unlike Plaintiff here, brought his action as a writ of habeas corpus, and consequently, the court

there was concerned with an exhaustion-related issue which does not arise here: whether "the

PLRA's 42 U.S.C. § 1997e(a) exhaustion requirement" applies "to a 28 U.S.C. § 2241 writ of

habeas corpus."  <u>See</u> <u>Colton v. Ashcroft</u>, 299 F. Supp. 2d at 687.

Plaintiff also cites to <u>Knish v. Stine</u>, 347 F. Supp.2d 682 (D. Minn. 2004) ("<u>Knish</u>").  <u>See</u>

Pl.'s Opp. at 7-8.  This case should not be accorded any weight by this Court.  <u>Knish</u> arose in a

wholly distinguishable procedural context.  It arose when a prisoner who had previously filed a

habeas petition challenging a BOP policy moved to alter or amend an order dismissing his

petition on jurisdictional grounds.  <u>See</u> <u>Knish</u>, 347 F. Supp.2d at 684-85.  The portion of the

<u>Knish</u> decision which concerned exhaustion cited to two Supreme Court decisions which

predated the enactment of the PLRA and the seminal decisions of <u>Woodford</u>, <u>Porter</u>, and <u>Booth</u>,

and which did not concern federal prisoners.  Id. at 686-87 (citing to Gibson v. Berryhill, 411 U.S. 564, 575 n. 14 (1973) and Houghton v. Shafer, 392 U.S. 639, 640 (1968)).  That portion of the Knish decision also cited to an Eighth Circuit decision which involved a heabeas corpus petition, in contrast with the action here.  See Knish, 347 F. Supp.2d at 687 (citing Elwood v. Jeter, 386 F.3d 842 (8th Cir.2004)).

Furthermore, Colton and Knish should be accorded little weight by this Court because (1) they were decided outside of this Circuit and are therefore not binding authority, and (2) they were decided before the Supreme Court's Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006) decision which further confirmed that exhaustion is mandatory under the PLRA.

Plaintiff's futility argument flies in the face of explicit Supreme Court precedent.  In Booth, 532 U.S. 731 (2001), the High Court closed the door on any futility arguments made by the inmate-plaintiff, stating, "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."  Id. at 741, n. 6.  Similarly, in Porter, 534 U.S. 516, 524 (2002), the Supreme Court noted that "[t]he current exhaustion provision differs markedly from its predecessor" inasmuch as "[o]nce within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."  The Porter Court also observed that "[a]ll 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective,'" and that "[e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."  Id. at 524 (internal citation omitted)."  Clearly, the plaintiff's belief that exhaustion of remedies is futile does not excuse him from the exhaustion requirement. See, e.g., Bitton v. Gonzales, 2006 WL 335766, at *1 (D.D.C. Feb. 13, 2006).  A prisoner must

exhaust "such remedies as are available" regardless of whether they are effective remedies or even remedies responsive to the specific relief requested.  <u>See</u> <u>Booth</u>, 532 U.S. at 740.

In the instant case, Plaintiff has failed to properly exhaust his administrative remedies. <u>See</u> Defs.' MTD/Opp. at 22-23.  As mentioned, the PLRA is explicit in requiring exhaustion as a precondition to judicial review.  It clearly is a non-waivable jurisdictional requirement. <u>See</u> 42 U.S.C. § 1997e(a); <u>Booth v. Churner</u>, 532 U.S. 731, 740-41 & n. 6 (2001); <u>Porter v. Nussle</u>, 534 U.S. 516 (2002); <u>Jackson v. District of Columbia</u>, 254 F.3d 262, 270-271 (D.C. Cir. 2001). Because Plaintiff failed to properly exhaust his administrative remedies, as required by the PLRA, this Court lacks subject matter jurisdiction over this action.  <u>See</u> Fed. R. Civ. P. 12(b) (1).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's action.

Respectfully submitted,


___/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


___/s/_____
WYNEVA JOHNSON, D.C. BAR # 278515
Assistant United States Attorney
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4106
Washington, D.C. 20530
(202) 514-7224


___/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

Of Counsel:

Alma Lopez
Assistant General Counsel
Office of the General Counsel
Litigation Branch
Federal Bureau of Prisons

24

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Defendants' *Reply* was sent by the

Court's Electronic Case Filing System, this <u>12th</u> day of June, 2007 to:

Brian W. Shaughnessy
913 M Street, N.W.
Suite 101
Washington, D.C. 20001

/s/ Jonathan C. Brumer

_____

JONATHAN C. BRUMER
Special Assistant United States Attorney