UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ALVIN KOTZ, | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 07-0856 (RMU) |
| | : | | |
| HARLEY G. LAPPIN, | : | Document Nos.: | 2, 3 |
| Director, Federal Bureau of Prisons, | : | | |
| in his official capacity and as an individual, | : | | |
| | : | | |
| and | : | | |
| | : | | |
| FEDERAL BUREAU OF PRISONS | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

D<small>ENYING THE</small> P<small>LAINTIFF'S</small> M<small>OTIONS FOR</small> I<small>NJUNCTIVE</small> R<small>ELIEF</small>

## I. INTRODUCTION

The plaintiff is an inmate with the Federal Bureau of Prisons ("BOP"), housed in Federal Correctional Institute ("FCI") Cumberland, Maryland. During the plaintiff's incarceration in FCI Cumberland, BOP initially admitted the plaintiff into the Residential Drug Abuse Program ("RDAP"). Individuals who successfully complete RDAP may receive a sentence reduction. Subsequent to his admission to RDAP, however, BOP officials determined that the plaintiff was ineligible for the sentence reduction. The plaintiff brings suit against Harley G. Lappin and the BOP (collectively "the defendant"), challenging this denial of eligibility. The plaintiff argues that because his successful completion of the program could result in his early release from prison, the defendant's actions violate his due process rights. The plaintiff seeks injunctive relief, asking the court to reverse the defendant's refusal to allow the plaintiff to participate in

RDAP and receive a sentence reduction. The defendant counters that, pursuant to BOP regulations, the plaintiff is not eligible for a sentence reduction because he previously completed RDAP and received a sentence reduction. Because the plaintiff has not shown a substantial likelihood of success on the merits, the court denies the plaintiff's motion.

## II.  BACKGROUND

On October 31, 2005, the plaintiff was sentenced in the District of Maryland to 36 months incarceration, Pl.'s Mot. for Temp. Restraining Order ("Pl.'s Mot.") ¶ 1, and his current release date is August 17, 2008, Def.'s Mot. to Dismiss and Opp'n to Pl.'s Mot. ("Def.'s Opp'n") at 6. At the time of sentencing, the judge recommended to the BOP that the plaintiff be allowed to participate in RDAP for drug treatment while serving his sentence. *Id.* All individuals who successfully complete RDAP receive a six-month placement in a Residential Re-Entry Center, or halfway house. Pl.'s Mot. ¶ 9. These individuals are also eligible for up to a 1-year sentence reduction pursuant to 18 U.S.C. § 3621(e). *Id.* ¶ 10.

The plaintiff previously completed RDAP during an earlier term of incarceration and received a 10-month reduction in his sentence. *Id.* ¶ 2. In July 2005, in anticipation of the plaintiff's incarceration, Paul C. Kurtz, Executive Director of Federal Inmates Advocates sought confirmation from BOP that the plaintiff would be eligible to participate in the program a second time. *Id.* ¶ 2. Samuel Betts, administrator in the BOP Regional Office, informed Kurtz that the plaintiff's prior participation in RDAP "would not have disqualified him from eligibility for a

sentence reduction . . . should he be accepted into RDAP a second time." *Id.* ¶ 3. The BOP admitted the plaintiff to the March 2006 class of RDAP.[1] *Id.* ¶ 5.

On January 23, 2006, BOP authorities advised the plaintiff that he was not eligible for a sentence reduction because he received a sentence reduction the first time he completed RDAP. *Id.* ¶ 6. Kurtz wrote to Simpson, requesting that he overrule the decision. *Id.* ¶ 7. On October 11, 2006, John M. Vanyur, BOP Assistant Director for Correctional Programs, denied the plaintiff's request to be placed in RDAP with eligibility for a sentence reduction. *Id.* ¶ 8. The plaintiff subsequently brought suit and filed motions for injunctive relief against the BOP to challenge its refusal to admit him into RDAP with the prospect of a sentence reduction.

Were the plaintiff allowed to participate in and successfully complete RDAP, and were he to receive the six-month early release to a halfway house, his prospective release date would be February 17, 2008. In addition, the plaintiff would be eligible for a 1-year sentence reduction pursuant to 18 U.S.C. § 3621(e). *Id.* ¶ 10. Factoring this potential sentence reduction with the six-month release to a halfway house, the plaintiff estimates that his prospective release date would have been May 1, 2007, a date that passed prior to the plaintiff's filing of the instant suit. *Id.*

---

[1] It is unclear from the parties' briefing when Betts gave this assurance. Similarly, the parties do not make clear when the plaintiff was admitted to the March 2006 class, but it was presumably between December 16, 2005 and January 23, 2006. *See* Pl.'s Mot. for TRO ¶ 4 (stating that on December 16, 2005, Kurtz requested the plaintiff's admission to RDAP upon his anticipated voluntary surrender in January 2006) and ¶ 6 (stating that on January 23, 2006, the BOP informed the plaintiff that he was ineligible for a sentence reduction).

### III.  ANALYSIS

#### A.  Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates:

(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also World Duty Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000).  It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits.  *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam).  Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review."  *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor.  *CSX Transp., Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005) (citing *CityFed Fin. Corp.*, 58 F.3d at 747).  "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury."  *CityFed Fin. Corp.*, 58 F.3d at 747.

Moreover, the other salient factor in the injunctive relief analysis is irreparable injury. A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction. *Id.* at 747 (quoting *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986)). Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *Id.*

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Id.* Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and "tailored to remedy the harm shown." *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990).

### B.    The Court Denies the Plaintiff's Motion for Injunctive Relief

#### 1.    Substantial Likelihood of Success on the Merits

The plaintiff alleges that the BOP improperly applied the policies governing sentence reductions after his eligibility for RDAP had been determined. Furthermore, the plaintiff argues that the defendant conveyed upon him a protected liberty interest through his admission to the March 2006 class for RDAP. Pl.'s Mot. at 2. The plaintiff brings a mixed bag of claims and does not clearly indicate the statute under which he seeks relief. Nevertheless, the court recognizes the plaintiff's claims that the defendant's actions violated due process and the

Administrative Procedure Act, 5 U.S.C. § 706 ("APA").  Pl.'s Mot at 6 (referring to a "protected liberty interest") & 7 (referring to the "Administrative Practices Act").

The defendant argues that the plaintiff cannot succeed on the merits of his claims.  Def.'s Opp'n at 10.  First, the defendant asserts that the plaintiff had no liberty interest protected by due process.  *Id*. at 29-31.  In addition, the defendant argues that the APA does not apply to this case and, even if it did, the plaintiff has not shown that the defendant's actions are arbitrary and capricious.[2]  *Id*. at 16-20, 25-29.

---

[2] The defendant also argues that the plaintiff failed to follow the specific administrative procedures required by the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626.  Def.'s Opp'n at 4.  Specifically, the plaintiff failed to file any informal requests at the institutional level, to file a request with the Warden of Cumberland, or to file an appeal for the BOP's January 23, 2006 determination with the Regional Director of the BOP.  Def.'s Opp'n at 10.  The plaintiff seemingly relies on his argument that the court should excuse the failure to exhaust because his interest in immediate judicial review outweighs the need for exhaustion.  Pl.'s Mot. at 9.

As stated, it is unclear whether the plaintiff seeks relief pursuant to the PLRA.  Prisoners seeking relief under the PLRA must, *inter alia*, exhaust prison grievance procedures prior to filing suit.  42 U.S.C. § 1997e(a).  Indeed, "no action shall be brought with respect to prison conditions under 42 U.S.C. 1983, or any other Federal law, by a prisoner confined in any jail, prison or correctional facility until such administrative remedies as are available are exhausted."  *Id*.  In addition to providing prison administrators with an opportunity to resolve the matter informally and to filter out frivolous claims, the exhaustion of administrative remedies prior to filing suit helps to generate an "administrative record that clarifies the contours of the controversy."  *Porter*, 534 U.S. at 524.  Although the exhaustion requirement is mandatory and applies broadly to "all suits about prison life," *Id*. at 532, the PLRA's exhaustion requirement is not jurisdictional in nature.  *Ali v. District of Columbia*, 278 F.3d 1, 5-6 (D.C. Cir. 2002).  Indeed, the "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*, 127 S. Ct. 910, 921 (2007).

Here, the record is lacking as to what administrative channels the plaintiff pursued, and the plaintiff notably only alleges that (1) he appealed to Dr. Simpson via Kurtz, and (2) his request to be placed in RDAP was denied "at the BOP's highest level."  Pl.'s Mot. at 8.  Although the court remains in serious doubt as to whether the plaintiff exhausted his administrative remedies as required by the PLRA, because the plaintiff does not specifically invoke the PLRA, and because his failure to exhaust is not a jurisdictional bar at any rate, the court proceeds to discuss merits of the plaintiff's claims.

### i.     The Plaintiff's Due Process Claim

The plaintiff argues that he had a protected liberty interest in the possibility of an early release based on his participation in RDAP.  Specifically, the plaintiff asserts that his protected liberty interest arose from the BOP's program statement under which he was admitted to RDAP.  Pl.'s Mot. at 7.  The plaintiff also appears to argue that a protected liberty interest arose from the BOP's representations that the defendant was eligible for a sentence reduction as well as from his admission to RDAP.  *Id*. at 6.  The defendant counters that the statute granting the BOP the authority to issue sentence reductions contains permissive, not mandatory, language, and the plaintiff could have no protected liberty interest in a sentence reduction that was entirely within the BOP's discretion.  Def.'s Opp'n at 30.

To succeed on a due process claim, the plaintiff must show that "(1) it has a constitutionally protected life, liberty or property interest and (2) the procedures employed deprived the plaintiff of that interest without constitutionally adequate procedure." *Beverly Enter., Inc. v. Herman*, 130 F. Supp. 2d 1, 17 (D.D.C. 2000) (citing *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991)).  The plaintiff's hurdle in this instance is to demonstrate that he had a constitutionally-protected liberty interest in participating in RDAP and receiving a reduced sentence.

Inmates have no protected liberty interest or entitlement in participating in rehabilitative programs. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (stating that Congress has given federal prison officials full discretion to control rehabilitation programs in the federal prison system, and inmates have "no legitimate statutory or constitutional entitlement sufficient to invoke due process").  Generally, inmates' protected liberty interests are limited to freedom from restraint

which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472 (1995). This limitation "relates to claims dealing with the day-to-day management of prisons," and it does not relate to early release through parole, as parole is an ordinary incident to prison life. *Ellis v. District of Columbia*, 84 F.3d 1413, 1418 (D.C. Cir. 1996) (applying *Sandin v. Connor*). This is so because a prisoner who is denied parole "will never suffer an 'atypical' or 'significant hardship' as compared to other prisoners. He will continue to serve his sentence under the same conditions as his fellow inmates." *Id*. (explicitly rejecting the argument that the denial of parole imposes extraordinary hardship by extending the length of incarceration). Statutes and regulations governing parole and early release may, indeed, create a liberty interest, but to do so, they must be of a "mandatory character." *Dorman v. Thornburg*, 955 F.2d 57, 58 (D.C. Cir. 1992); *Ellis*, 84 F.3d 1413, 1419-20.

> The statute authorizing the sentence reduction associated with RDAP reads as follows:
>
>> The period the prisoner remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year form the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B). Because the BOP "may" reduce the sentence, it is a discretionary function. *Appalachain Power Co. v. E.P.A.*, 135 F.3d 791, 807 (D.C. Cir. 1998) (stating that "when a statute uses the permissive 'may' rather than the mandatory 'shall,' [it] suggests that Congress intends to confer some discretion on the agency"). Indeed, prison officials are vested with substantial discretion to set the terms of conditions of rehabilitative programs, and this discretionary function undercuts the plaintiff's argument that he has a protected liberty interest.

*Dorman*, 955 F.2d at 58 (stating that prison officials' discretion to set terms and conditions of prison employment precludes the implication of a protected liberty interest) (quoting *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982)). The statute, therefore, does not grant the plaintiff a liberty interest.

  The plaintiff also argues that Program Statement 5330.10 and BOP's representations created a protected liberty interest, but he provides little legal support for the argument. He simply asserts that "[a] protected liberty interest *may* arise from policy statements issued by the BOP." Pl.'s Mot. at 6 (emphasis provided).

  Internal documents as part of prison administration have been found not to create a protected liberty interest. *Price v. Kelly*, 847 F. Supp. 163, 167-68 (D.D.C. 1994) (stating that "it is the mandatory nature of prison regulations – such that they serve to limit discretion – that is integral to creating a liberty interest" and explaining that if a liberty interest could arise from an internal document, "prison administrators could simply create or destroy liberty interests on a whim through a mere internal administrative device") *aff'd* 56 F.3d 1531 (D.C. Cir. 1995)). Many of the cases cited by the plaintiff address liberty interests being created by state statutes, and *Price* squarely addresses the fact that a protected liberty interest must come from either the due process clause itself or state statutes or regulations, but not from internal documents.[3] 847 F. Supp. at 166. Therefore, the plaintiffs argument is unpersuasive.

---

[3]  The remaining cases cited by the plaintiff represent the 6th Circuit's view that policy statements can create a protected liberty interest in specific circumstances. But these cases are not binding authority, and at any rate, their applicability assumes that only Program Statement 5330.10 was valid at the relevant time. But the plaintiff's argument that Program Statement 5331.01 is invalid hinges on whether the APA required a notice and comment period prior to its enactment, Pl.'s Mot. at 8, and as the court concludes *infra*, it did not. Therefore, Program Statement 5331.01 was also valid, and the cases cited by the plaintiff are of no moment.

As cogently stated by one of the cases cited by the plaintiff, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Bills*, 631 F.2d at 1291 (citing *Montayne v. Haymes*, 427 U.S. 236, 242 (1976)). What's more, the court acknowledges "the well-established reluctance of the Federal Courts to intervene in internal affairs of state or Federal penal institutions . . . unless it can be clearly demonstrated that they interfere with fundamental rights guaranteed by the Constitution" and the fact that "policy statements [can] be revoked by the discretionary act of the Bureau of Prisons." *Walker*, 558 F.2d at 1254. Therefore, the court cannot conclude that the plaintiff has demonstrated a substantial likelihood of success on the merits of his due process claims.

### ii. The Plaintiff's APA Claim

After the BOP admitted the plaintiff to RDAP, it indicated that the plaintiff was ineligible for a sentence reduction pursuant to Program Statement 5331.01, which provides that inmates may only once earn early release for successful completion of RDAP. *Id*. The plaintiff contends that because the defendant allegedly adopted Program Statement 5331.01 without the required notice and comment period, the use of this policy violates the APA. The defendant protests that Program Statement 5331.01 is an interpretive rule and, consequently, is not governed by the APA. Def.'s Opp'n at 16-26.

The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. Under the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." *Id.* § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). The APA is limited in application, however. The requirements do not apply to "interpretive rules, general policy statements, or rules of agency organization, procedure or practice." 5 U.S.C. § 553(b)(3)(A).

Pursuant to the test articulated in *American Mining Congress v. Mine Safety & Health Administration*, the court must scrutinize whether

> (1) in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) the agency has published the rule of the Code of Federal Regulations, (3) the agency has explicitly invoked its general legislative authority , or (4) the rule effectively amends a prior legislative rule. [And i]f the answer to any of these questions is affirmative, we have a legislative, not an interpretive rule.

995 F.2d 1106, 1112 (D.C. Cir. 1993). First, the statutory basis for the BOP to set eligibility for early release programs is articulated in 18 U.S.C. § 3621(e), and the new Program Statement had no effect on the broad discretionary authority given to the BOP to dispense sentence reductions. Second, the BOP did not publish the rule in the Code of Federal Regulations. Rather, the new Program Statement was issued in an informal, internal publication. Def.'s Opp'n Ex. D. Third, the BOP did not explicitly invoke its rulemaking authority in the new Program Statement. Finally, the plaintiff does not allege, and nothing suggests, that new Program Statement amended a prior legislative rule. Therefore, because none of the above conditions is met, the new Program

Statement is an interpretive rule, and the APA, including its notice and comment requirements, does not apply to it.[4]  *Reno v. Koray*, 515 U.S. 50, 61 (1995).

### 2. Irreparable Injury

To justify preliminary relief, the plaintiff must also demonstrate that the injury is certain, great, actual and not theoretical.  *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).  And, because the plaintiff seeks a mandatory injunction, rather than to merely maintain the status quo, he must demonstrate beyond the familiar 4-part test for injunctive relief, that he is "clearly" entitled to the relief he seeks or "extreme or very serious damage will result."[5]  *Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006); *see also King v. Leavitt*, 475 F. Supp. 2d 67, 71 (D.D.C. 2007) (quoting *Mylan Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000)).

The plaintiff alleges that if he were granted the 6-month sentence reduction, and if he were granted an extra 1-year sentence reduction pursuant to § 3621, he would have been released from prison on May 1, 2007.  By remaining incarcerated, he argues that he suffers irreparable injury in that his liberty will be wrongfully restricted by approximately one year.  Pl.'s Mot. at 5.

---

[4]  The plaintiff also argues that the defendant's actions were "arbitrary and capricious" because the "Program Statement 5331.01 was used by the BOP decision-maker, despite its not being in effect."  Pl.'s Mot. at 8.  But Program Statement 5331.01 is not subject to the notice and comment requirement, as discussed *supra*, and it took effect on September 29, 2003.  Def.'s Opp'n, Ex. D.  In addition, the plaintiff does not counter the defendant's assertion that "[s]ince the implementation of 18 U.S.C. § 3621(e)(2)(B), the Bureau has not provide inmates who were previously credited with sentence reductions . . . with subsequent sentence reductions."  Def.'s Opp'n at 4.  Therefore, the court cannot conclude that the plaintiff has demonstrated a likelihood of success as to this claim.

[5]  The D.C. Circuit has neither adopted nor rejected this rule.  *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 834 n.31 (D.C. Cir.1984) (explaining that "[i]n this circuit, however, no case seems to squarely require a heightened showing, and we express no view as to whether a heightened showing should in fact be required").

The defendant counters that the plaintiff will suffer no irreparable injury because he is already required to serve the sentence as originally imposed. Def.'s Opp'n at 32. A denial of a sentence reduction, according to the defendant, cannot prejudice him in any way. *Id*.

The plaintiff's argument that he will be wrongly incarcerated would be sufficient to meet the standard of irreparable injury. *See e.g. Lake v. Speziale*, 580 F. Supp. 1318, 1335 (D.C. Conn. 1984) (stating that "'there is no adequate remedy at law for a deprivation of one's physical liberty.'") (quoting *Cobb v. Green*, 574 F. Supp. 256, at 261) (W.D. Mich. 1983)). But, as discussed *supra,* the plaintiff has not clearly demonstrated that the determination of his ineligibility for a sentence reduction is wrongful, that is, in violation of his constitutional rights. In addition, he has not demonstrated beyond speculation that had he completed RDAP, the BOP would have granted him the 1-year sentence reduction pursuant to § 3621. Pl.'s Mot. at 9 (stating that if the defendant "were found to be eligible for the one-year 18 U.S.C. § 3621(e) sentence reduction" he would be released to a halfway house on approximately May 1, 2007). Without showing that his incarceration is wrongful, the court is loathe to declare that the plaintiff would suffer "extreme or very serious damage" by serving the remainder of a properly-imposed sentence. Although the plaintiff does, indeed, face a sympathetic set of circumstances, he simply has not made a sufficient showing of irreparable injury to overcome for his failure to demonstrate a substantial likelihood of success on the merits. *See Sandoz, Inc. v. Food & Drug Admin.*, 2006 WL 1897728, at *3 (D.D.C. July 12, 2006) (explaining that when a plaintiff fails to show a substantial likelihood of success on the merits, it must make a "very strong" showing of irreparable harm to obtain a TRO) (quoting *Apotex, Inc., v. Food & Drug Admin.*, 2006 WL 1030151, at *16 (D.D.C. April 19, 2006)).

### 3.     Injury to Other Parties and Public Interest Considerations

The public certainly has an interest in the judiciary intervening when prisoners raise allegations of constitutional violations. *Rhodes*, 452 U.S. at 332. And yet, "[c]ourts must and do recognize the primacy of the legislative and executive authorities" in the administration of prisons. *Inmates of Occoquan v. Barry*, 844 F.2d 828, 836 (D.C. Cir. 1988) (quoting *Rhodes*, 452 U.S. at 362). Courts are "ever cautioned to stay out of the business of micro-managing prisons." *Taylor v. Stine*, 2007 WL 1741781, at *6 (E.D. Ky. June 12, 2007). Therefore, in light of the plaintiff's failure to demonstrate a substantial likelihood of success on the merits, the court declines to grant the extraordinary relief of an injunction.

Neither the plaintiff nor the defendant argue that other parties will be injured by an injunction. Indeed, the court can identify no other parties who would be affected by the requested injunctive relief.

### IV.     CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motions for injunctive relief. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 10th day of October, 2007.

                                              RICARDO M. URBINA
                                              United States District Judge